IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Michael Williamson, et al.,          :

      Plaintiffs,             :

  v.                                  :    Case No. 2:06-cv-0292

Recovery Limited Partnership,  :    JUDGE SARGUS
et al.,
                                   :
      Defendants.

OPINION AND ORDER

    This case was filed by a number of individuals and/or entities who claim that they were promised a percentage of the proceeds of treasure sold by defendants.  Those plaintiffs will be referred to as the "Williamson plaintiffs" because there were also other plaintiffs in this case who have made different claims.  The treasure that is the subject of the Williamson plaintiffs' claims was recovered through defendants' salvage operation of the shipwrecked *S.S. Central America*, a sidewheel steamer that sank in the Atlantic Ocean in 1857.  The vessel was carrying, among other things, a cargo of gold bars destined for New York.  The Williamson plaintiffs all provided service, equipment, or other assistance for the salvage effort.  In their complaint (which was filed in the Franklin County, Ohio Court of Common Pleas and removed to this Court), they claim a contractual entitlement to a share of the proceeds from sales of the recovered gold.

    Defendants have moved for a change of venue.  They argue that this Court is either required to, or ought to, transfer the case to the United States District Court for the Eastern District of Virginia at Norfolk.  That Court presided over, and still retains jurisdiction over, litigation involving these defendants

and the insurers who claimed ownership of the *Central America's* treasure.  According to defendants, the Eastern District of Virginia has great familiarity with the issues surrounding the recovery of the treasure, the need to maintain absolute secrecy concerning the defendants' novel methods of operation, and the terms under which the treasure was to be marketed, and is therefore in the best position to evaluate the plaintiffs' claims.  For the following reasons, the motion to change venue will be denied.

I.

The facts surrounding the motion to change venue are largely undisputed.  For purposes of ruling on this motion, the Court assumes the truth of the Williamson plaintiffs' allegations that they have a contract with defendants (or some of them) which promises them a percentage of the proceeds of the sale of treasure recovered from the *Central America*, and that although some amount of gold has been brought to the surface and sold, they have not received any money.

The Williamson plaintiffs do not appear to have any substantial connection with Ohio.  However, at least at one time, the defendants were headquartered in Columbus, and the contracts at issue were apparently signed here.

The shipwreck itself does not lie within the territorial waters of the United States.  However, once the defendants located the ship and proposed to conduct salvage operations, other claimants to the treasure surfaced.  In order to resolve the issues of ownership of the treasure and salvors' rights, litigation was commenced in the Eastern District of Virginia.  That court has now rendered a final decision on how the proceeds of sale of the treasure are to be divided among the defendants here and other claimants.  The Williamson plaintiffs were never a part of that litigation.  That court has also retained

jurisdiction to resolve certain disputes concerning the shipwreck, although the issues raised by the Williamson plaintiffs do not appear to be disputes over which the Virginia District Court has specifically retained jurisdiction.

The parties have filed affidavits relating to the location of documents and witnesses.  Defendants state that the Virginia District Court has "exclusive access" to various documents and sealed transcripts relating to the marketing and confidentiality issues that defendants assert are crucial to this case.  They note that the defendant business entities are all headquartered in Florida, and that although many of the individual defendants live in Ohio, they would not object to appearing in Virginia for court proceedings.  From their perspective, the two key witnesses in this case are defendant Thompson, a Florida resident, and the Clerk of the District Court for the Eastern District of Virginia.  They also note that the Eastern District of Virginia is the location of the legendary "rocket docket" and that the case would progress more swiftly in that jurisdition.

Plaintiffs point out that, in addition to many defendants being Ohio residents and the contracts having been signed in Ohio, the contracts include a forum selection clause which provides that any disputes concerning the contracts shall be resolved in this Court.  The contracts also state that they are to be construed according to Ohio law.  Finally, plaintiffs note that at least two of the District Judges who presided over the Virginia case are now deceased.  The Court will make its venue decision on the basis of these facts.

III.

Before turning to the question of whether, as an exercise of discretionary authority, the Court should transfer this action to the Eastern District of Virginia, the Court must first address plaintiffs' argument that such a transfer is legally

3

impermissible. According to plaintiffs, this action could not have been brought in the Eastern District of Virginia under any applicable venue statute. 28 U.S.C. §1404(a) permits the Court to transfer a case only to a judicial district in which the case might properly have been brought. Further, under <u>Hoffman v. Blaski</u>, 363 U.S. 335 (1960), the defendants' consent to the jurisdiction of the Virginia District Court does not cure the venue problem. Consequently, plaintiffs argue, the transfer requested by defendants may not be ordered under §1404(a).

Defendants counter by arguing that, under 28 U.S.C. §1391(b), an action such as this one may be brought in any district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property which is the subject of the action is situated ...." They contend that under this test, this action could have been brought in the Eastern District of Virginia even if some or all of the defendants are not otherwise subject to personal jurisdiction in that district. Therefore, the transfer they request would not violate the rule announced in <u>Hoffman v. Blaski</u>.

The Court notes that the basis upon which the defendants removed this case is that at least one of the Williamson plaintiffs' claims sounds in admiralty law. The plaintiffs appear to concede that point, noting in their responsive brief that the contracts they are suing under are maritime contracts and that federal maritime law applies to their claims. If that is so, it would appear that a different set of rules applies when determining the proper venue of an admiralty case.

Fed.R.Civ.P. 82 provides that an admiralty or maritime claim is not treated as a civil action for the purposes of 28 U.S.C. §1391-1392. <u>See also St. Paul Fire & Marine Ins. Co. v. Tug EAST COAST</u>, 2002 WL 1906912 (E.D. La. 2002). Thus, although the

4

statutes relating to changing venue (28 U.S.C. §1404 and 1406) apply in admiralty cases, the statutes for determining venue do not. Id. Rather, venue in an admiralty case is proper wherever the defendant has property. Davis v. Hill Engineering, 549 F.2d 314 (5th Cir. 1977), citing Ex Parte Louisville Underwriters, 134 U.S. 488 (1890).

Neither party has addressed whether the defendants have property in the Eastern District of Virginia. It may well be that some items from the shipwreck are physically present in that district. Under these circumstances, it is simply not clear whether venue over the Williamson plaintiffs' admiralty claim would be proper in the Eastern District of Virginia, and that court may be a district in which the action could have been brought. If that were so, the transfer of this case to that district would not be prohibited by the rule announced in Hoffman v. Blaski. Consequently, the Court will not predicate its decision on that case, but will analyze whether the totality of the circumstances favor a change of venue.

IV.

The next issue to be determined involves the Williamson plaintiffs' assertion that the defendants, in the contracts at issue, agreed that the United States District Court for the Southern District of Ohio would be the exclusive forum for litigating disputes arising out of the contracts. Plaintiffs, citing to federal maritime law, argue that such forum selection clauses are enforceable and that there is no basis for this Court to disregard the parties' choice of forum. Defendants do not dispute the existence of the forum selection clauses, but argue that because the contracts were written before the Virginia District Court began to exercise jurisdiction over the shipwreck and the associated salvage claims, that court's orders take priority over the contract provisions.

Defendants' argument is premised on the fact that the Virginia District Court is the court having exclusive jurisdiction over salvage claims asserted against the *Central America*. Once that court assumed such jurisdiction, it also (according to defendants) set a bar date for the filing of claims either against the defendant ship or any items from the ship which had already been recovered, or which would be recovered in the future. Defendants appear to be asserting that the claims advanced by the Williamson plaintiffs are not only salvage claims against the shipwreck or the treasure, which would make them subject to the exclusive jurisdiction of the Virginia District Court, but presumably are time-barred as well because they were not filed by the bar date, which (again, according to defendants) was April 3, 1990.

In order for the Court to accept this argument, it would have to find that the contract claims and associated claims for breach of fiduciary duty, asserted against the defendants individually, are the equivalent to salvage claims against the *Central America*. Neither party has presented the Court with a precise definition of a salvage claim, but it would appear that such a claim is made directly against a vessel or its cargo and must be based upon either a claim of ownership or a claim to salvage rights. The Williamson plaintiffs do not contend that they ever had an ownership interest in the *Central America* or its treasure. Rather, they assert claims for money damages against the defendants. The fact that the value of their claims may be measured by reference to the selling price of the treasure does not convert their claim into a claim of either ownership or salvage rights. The contracts in question give them no right to possess or sell the treasure and they assert no such claim in this case. This Court concludes that the order of the Virginia District Court does not establish exclusive jurisdiction in that

court to resolve the Williamson plaintiffs' claims, and that it does not "trump" the forum selection clauses in their contracts. Thus, the Court must next determine if these clauses should be given effect based on traditional principles that apply to the enforcement of forum selection clauses.

As the Williamson plaintiffs correctly point out, the Supreme Court held, in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972), that "the correct doctrine to be followed by federal district courts sitting in admiralty" is to give effect to freely-negotiated forum selection clauses "unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." As illustrations of circumstances which might render the enforcement of such a clause "unreasonable," the court cited "fraud, undue influence, or overweening bargaining power." Id. at 12. The court was also concerned in that case with whether the forum which the parties had selected - which, in that case, was a court other than a court of the United States - would fairly adjudicate the claims. This Court presumes that no such concern exists here.

To be sure, the existence of a forum selection clause may not preclude the Court from evaluating other factors, and particularly those that deal with the convenience of witnesses and the court, that are usually deemed relevant in deciding whether to transfer a case under §1404(a). See Stewart Org. v. Ricoh Corp., 487 U.S. 22 (1988). However, that was a diversity case, and there is at least some authority for the proposition that a different approach is to be taken in a diversity case than in an admiralty case, such as the instant case, to which the Bremen decision is directly applicable. See, e.g., Kerobo v. Southwestern Clean Fuels Corp., 285 F.3d 581 (6th Cir. 2002). Even in diversity cases, some decisions from this district give full effect to forum selection clauses unless there is evidence

of fraud, overreaching, or that trial in the chosen forum would be so restrictive or burdensome as to effectively deprive of the parties of a fair day in court. See, e.g., Valpack of Cincinnati v. Valpack Direct Marketing Systems, 2005 WL 3244321 (S.D. Ohio 2005). No matter how the interplay between the Bremen and Stewart Org. v. Ricoh Corp. decisions is interpreted, however, it is clear that a forum selection clause is a significant factor in the venue calculus. Moses v. Business Card Express, 929 F.2d 1131 (6th Cir. 1991).

Here, there is simply no evidence of any kind that suggests unfairness in the bargaining process. Further, this is a case where the plaintiffs seek to enforce a forum selection clause that was clearly designed to benefit the defendants. At the time of contracting (and it is still true today), none of the Williamson plaintiffs had any contact with Ohio. Defendants, however, considered Columbus to be their home base. The contracts required the Williamson plaintiffs to agree to litigate their differences with defendants on what amounted, at the time, to defendants' home turf. It is difficult to see how the clause could now be invalidated on grounds that it disadvantaged the defendants in some way.

Even if the Court were to look beyond whether there is evidence of fraud, overreaching, or onerous operation of the clause, other factors do not favor a change of venue. None of the parties currently have a substantial connection with the Eastern District of Virginia. It would be just as easy for them to attend a trial in Columbus as in Norfolk. The key documents in this case appear to be the contracts, which are not voluminous, and defendants' records of their sales of the "up treasure" (i.e. the treasure that has already been brought to the surface and auctioned). Those records could conveniently be brought to Columbus. Although orders of the Virginia District

8

Court concerning marketing techniques may be of some value in deciding the case, that is by no means certain. It is certainly possible that the Court will distill the issues in this case down to the simple question of whether the contracts unequivocally call for plaintiffs to receive compensation, measured by a percentage of the sales of treasure to date, for the services they rendered under the contracts, and, if so, how much that compensation is. Marketing plans and expenses may turn out to be irrelevant to those questions. In any event, should documents that are currently under seal in the Virginia District Court prove relevant to this Court's determination of any issue, the Court would be astounded if it would be prevented from reviewing those documents or having them filed under seal in this case.

When set against the forum selection clause and the fact that the convenience of the parties and witnesses do not strongly favor a change of venue, the possibility that the Virginia District Court's familiarity with the issues surrounding the salvage of the *Central America* might better position it to decide this case is entitled to little weight. The Court sees no realistic possibility that any decision it renders on the Williamson plaintiffs' claims will create a risk of inconsistent adjudications or a "fracturing" of federal admiralty jurisdiction over what defendants apparently view as a single controversy. Further, the Court is confident that once the initial procedural issues of venue and personal jurisdiction are resolved, the case can proceed as expeditiously as the parties wish. For all of these reasons, to the extent that the forum selection clause is deemed not to be controlling, the Court still concludes that a change of venue is not appropriate.

V.

For the foregoing reasons, the defendants' motion to transfer venue (#43) is denied.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge