IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL H. WILLIAMSON, et al.,
    Plaintiffs,

v.

RECOVERY LIMITED PARTNERSHIP, et al.,
    Defendants.

CASE NO. C2-06-292
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE TERENCE P. KEMP


THE DISPATCH PRINTING CO., et al.,
    Plaintiffs,

v.

RECOVERY LIMITED PARTNERSHIP, et al.,
    Defendants.

CASE NO. C2-06-292
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE TERENCE P. KEMP


THE DISPATCH PRINTING CO., et al.,
    Plaintiffs,

v.

GILMAN D. KIRK, et al.,
    Defendants.

CASE NO. C2-06-292
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE TERENCE P. KEMP

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion for Damages brought by Plaintiffs, Dispatch Printing Company and Donald C. Fanta and the Defendants' Motion for Satisfaction. For the reasons that follow, the Plaintiffs' Motion is granted in part and denied in part. The Defendants' Motion is granted.

I.

This case was originally filed in the Franklin County Court of Common Pleas and removed to this Court on April 24, 2006. Thereafter, the Court scheduled a hearing on July 10, 2006 regarding the Plaintiffs' Motion for a Preliminary Injunction. Following mediation on the same day, the parties agreed, and the Court ordered, a review of the financial affairs of Defendant Columbus Exploration ("CX") and Recovery Limited Partnership ("RLP") for the period beginning in 2000 through the date of the Order.

By the terms of the Consent Order, the financial documents to be produced by the Defendants and reviewed by an accounting firm were identified in a letter dated July 11, 2006 and prepared by KPMG, which was retained by the Plaintiffs to undertake the review. The July 11, 2006 letter was expressly referenced in the Consent Order as defining the type of records to be reviewed. The letter listed twenty-five categories of documents to be produced and stated in the penultimate sentence:

> The above list will undoubtedly be substituted by additional
> document, record, and/or information requests in the future.

From the start, a portion of the documents required to be produced was undoubtedly not defined with precision.

Initially, the Court cannot ignore the contentious nature of this case. The docket in this case reveals the filing of over 470 documents, more than one every two business days over a period of two years and nine months. In many instances, the Court is convinced that matters raised in motions could have been resolved with far less expense and court intervention, if the parties and counsel had made good efforts at reaching an accommodation. This is particularly so

given that, from the start, KPMG indicated that other records, then undefined, would be needed.

Before a more precise review of the issues raised, a few general observations are in order. First, the Consent Order expressly provides that the "Plaintiffs will bear the costs (a) of the Accountant's review and preparation of its Report, and (b) incurred by CX pursuant to the CX Operating Agreement § 9.02(b)." (Order, July 20, 2006, ¶6). This Court has noted that Ohio law, with reference to RLP, and Delaware law, with reference to CX, requires those entities, independent of the Consent Order, to make available much of the information sought by KPMG. In this action for an accounting, however, the parties agreed that the Plaintiffs would bear the cost of the financial analysis. Consequently, only if the Defendants are in violation of the Consent Order are the Plaintiffs entitled to recover their costs associated with the financial review. Whether such information should have been forthcoming in timely annual reports is an issue for another day and another court.

Second, the agreement originally made by the parties became a Court Order on July 20, 2006. Willful violation of the agreement, therefore, becomes a willful violation of a Court Order, with resulting sanctions, including an awarding of costs and fees. In contrast, one party's bonafide interpretation of an ambiguous term of the Order, although rejected by the Court, does not constitute willful disobedience of a court order, if the party ceases such conduct following a contrary judicial interpretation of such term.

Third, before a finding of contempt may be entered, a party must have willfully violated a specific provision of a court order. The Court must be convinced by clear and convincing evidence that a party has violated an order of the Court. *Glover v. Johnson,* 934 F.2d 703, 707 (6th Cir. 1991).

3

With those considerations in mind, the Court will review the claim of the Plaintiffs that the Defendants have willfully violated one or more orders issued in this case. Several of the precise claims made involve matters brought before the Court in earlier motions. Thus, the Court will also consider whether the Defendants acted in good faith, although in a manner later found by the Court to be an erroneous interpretation of the Consent Order. If so, then prompt compliance with the Court's interpretation of the Consent Order cannot constitute contempt.

## II.

The Plaintiffs allege that the Defendants have violated Orders of the Court in seven separate instances.[1] The claims include:

1. Defendant's Alleged Failure to Meet the 60-Day Deadline.
2. Defendants Alleged Refusal to Produce Photocopies as a Means of Delay.
3. Defendants Alleged Violation of the February 1, 2007 Order.
4. Defendants' Requirement that the Accountants Bring Their Own Photocopier.
5. Defendants' Use of No Copy Paper.
6. Defendants' Failure to Timely Produce Inventories Regarding the Recovered Treasure.
7. Defendants' Claim That They Do Not Possess Marketing Plans, Strategies and Sales Reports.

The Court will address each claim *seriatim*.

1. Defendants' Alleged Failure to Meet the 60-Day Deadline.

Paragraph 3 of the July 20, 2006 Consent Order states:

Within sixty (60) days after entry of this Order, Defendants shall provide Plaintiffs' accountant, (hereafter, the "Accountant") with full access and opportunity to review the documents and materials

---

[1] The Plaintiffs have submitted ten alleged instances of contempt, which the Court has reduced to seven given overlapping assertions.

4

> *regarding the period from January 1, 2000 through the date of entry of this Order, identified in the July 11, 2006 list by Accountant, for the purpose of preparing a report (hereinafter, "Report") of the financial affairs and condition of CX and RLP.*
>
> *Defendants shall make available to the Accountant upon request all documents in response to paragraph 25 of the Accountant's July 11, 2006 letter regardless of their date. The preceding sentence shall not otherwise enlarge or contract the scope of the documents reviewable by the Accountant.*

Plaintiffs contend that the Defendants' accountant first met with KPMG representatives on September 20, 2006, which was two days past the 60 day period designated in the Consent Order. Steven Alexander, the Defendants' accountant, has testified that he was ready to meet on September 18, 2006, but moved the date until September 20, 2006, at KPMG's request.

The Court takes a dim view of this portion of the Plaintiffs' claim. There is no evidence to refute Alexander's claim that KPMG asked to move the meeting date to September 20, 2006. Taking Plaintiffs' contention at face value, it is KPMG not the Defendants, who should be held in contempt. While the Court does not condone a late compliance with its Order, it is clear that the Plaintiffs should have taken steps, particularly through KPMG, to meet the September 18, 2006 deadline.

Plaintiffs also contend that on September 20, 2006, Alexander had only a small number of the requested documents, somewhere in the range of 500 pages. Alexander, who is a solo accountant, did not have all of the documents described in the KPMG letter of July 11, 2006, but did provide a number of documents at the first meeting. The precise language of the Consent Order did not require that the Defendants provide copies of all documents, only "full

5

access and opportunity to review the documents."

This issue was addressed in a subsequent Order of the Court. On December 5, 2006, the Court found in a written Order that the Defendants had failed to comply with the 60 day requirement. The Court also noted that the protocol employed by Alexander, as advised by Defendants' counsel, was burdensome and conflicted with the Consent Order. As noted in the December 5, 2005 Order, KPMG was not required to send a written request for documents and the Defendants could not unilaterally deny the copying of requested documents. The Court ordered a more specific process with a dispute resolution mechanism incorporated in the December 5, 2006 Order.

In the December 5, 2006 Order, the Court found no evidence presented that the individual Defendants had violated the Consent Order. The Court did find that CX and RLP had violated the Consent Order, most significantly by imposing a burdensome protocol by which to request records, and asserting a unilateral right to deny KPMG photocopies of documents. The Court held in abeyance any further action, including sanctions.

At the time of the December 6, 2006 Order, the Court was concerned that the documents described in the KPMG letter incorporated in the Consent Order would not be turned over. This concern is what led the Court to hold sanctions in abeyance. Following the December 5, 2006 Order, the Defendants stopped using the protocol and complied with the court-ordered copying procedure.[2] While the production of documents thereafter was fraught with other issues described below, the Court finds that the Order of December 5, 2006 was necessary to provide a

---

[2]The Court addresses other issues regarding photocopying in regards to the Plaintiffs' Claims 2 and 5.

6

structure by which documents would be exchanged, and that thereafter those offending procedures addressed in the Order were terminated by the Defendants.

2. <u>Defendants Alleged Refusal to Produce Photocopies as a Means of Delay</u>.

Plaintiffs contend that Alexander began a new operating procedure after the Court's Order of December 5, 2006. The Court had ordered one week before, that, if KPMG requested documents that the Defendants believed should not be tendered, the Defendants were required to notice the Court within three days of such dispute. No notification has been received and no objection lodged by the Plaintiffs on this precise issue. On this claim, the Court finds no basis upon which to find the Defendants in contempt.

3. <u>Defendants Alleged Violation of the February 1, 2007 Order</u>.

On January 30, 2007, the Court held a hearing on Defendants' Motion to Limit Photostatic Copying and Request for *In Camera* Inspection of certain documents. The same hearing addressed Plaintiffs' Motion to Hold Defendants in Contempt for Failure to Comply with the December 5, 2006 Order.

On February 1, 2007, this Court denied Plaintiffs' Motion to Hold the Defendants in Contempt. In the same Order, the Court ordered that certain portions of the board minutes sought by the Plaintiffs be redacted following an *in camera* review of the documents for attorney-client privileged materials. The Court also directed that the Defendants permit the Accountant to photocopy six types of documents, including cancelled checks, invoices, agreements, membership listings, sales data, *etc*.

One day later, the Defendants filed a motion seeking permission to use what is termed "do not copy" paper as they complied with the Court's order directing photocopying. The

7

same motion raised issues previously addressed by the Court, including its order that names and addresses of all members, directors and officers be submitted to the Accountants. On February 6, 2007, the Plaintiffs filed a new motion seeking to hold the Defendants in contempt. Thereafter, on February 7, 2007, the Court reiterated its Order of February 1, 2007 and warned the Defendants that failure to comply would result in sanctions. The Court otherwise denied without prejudice Plaintiffs' Motion to Hold the Defendants in Contempt.

Plaintiffs now allege that the Defendants (1) delayed production of the documents; (2) improperly sought to compel the Accountants to sign a confidentiality and non-copy pledge not required by the Consent Order; and (3) refused to produce electronic copies of documents other than checks and invoices.

The Court is not persuaded that these three allegations are sufficient to establish civil contempt. The information sought was ultimately delivered. The additional confidentiality agreement was not signed. The production of electronic documents, while no doubt more efficient, was not required by the Consent Order.

4. Defendants' Requirement that the Accountants Bring Their Own Photocopier.

Plaintiffs next complain that Alexander, acting on behalf of the Defendants, forced KPMG to bring their own copier to his office, since Alexander would not permit them to send the items to an outside copying firm. Further, according to Plaintiffs, Alexander sent the same documents to an outside firm for Bates-stamping, demonstrating the insincerity of his claims.

While a compromise would have been preferable, the Court finds no specific order violated by Alexander in requiring that the copying be done at his office.

8

5. <u>Defendants' Use of No Copy Paper</u>.

The Plaintiffs contend that use of no-copy paper prevented easy usage of copied documents, given the resulting type of paper and lack of detail. The parties advised the Court that an agreement had been reached, and the February 7, 2007 Order described the matter as moot. Consequently, in the absence of any further order, the Court finds no specific order violated by the Defendants.

6. <u>Defendants' Failure to Timely Produce No Production of Inventories Regarding the Recovered Treasure</u>.

Plaintiffs contend that the Defendants first refused to turn over the inventory of the up-treasure and, after being expressly ordered to obtain and tender the same documents, delayed delivery by more than eleven months. In the Court's view, this particular document was of critical importance in the accounting process, insofar as the inventory described property that represented the primary tangible assets of CX and RLP. Without a documented list of the assets belonging to the entities, an analysis of the business' financial status was impossible to prepare.

In May of 2007, after KPMG requested the inventory filed under seal in the U. S. District Court for the Eastern District of Virginia, Defendant-entities, through counsel, represented in open court that they would move for a limited disclosure of the inventory. This Court very specifically advised the parties in open court that the Accountants were entitled to the inventory, based upon the <u>original</u> <u>terms</u> of the Consent Order.

On September 20, 2007, the District Court in Virginia granted the Defendants access to the inventory. Nonetheless, the inventory was not tendered to the Accountants until

9

August 8, 2008. No reasonable justification has been presented to explain this delay. For the reasons that follow, the Court finds CX and RLP in contempt of the Consent Order.

The entities raise two defenses to the delay in producing the inventory. First, they contend that, while their appeal was pending in the Sixth Circuit, they were not required to turn over the inventory. Second, the entities claim that KPMG representatives refused to sign documents committing them to be bound by orders issued by the District Court in Virginia. The Court rejects both arguments.

As to the first issue, a hearing was held September 7, 2007. The Court directed counsel for the entities to obtain through the Virginia District Court a copy of the inventory of the up-treasure, filed in that Court under seal. This Court again referenced the Consent Order, which required the entities to submit for review documents "regarding the period from January 1, 2000 through the date of this Order [July 20, 2006] . . . ." As the Court made clear on September 7, 2007 and in prior proceedings, documents created before the period between January 1, 2000 and July 20, 2006, were required to be produced if such documents were "regarding the period." During the September 7, 2007 hearing, the Court reiterated its view that the inventory in the Virginia court regarded matters involved in, or even essential to, the accounting period. Further, counsel for the entities agreed during the same hearing to obtain the inventory.

On October 4, 2007, the entities filed a notice of appeal and asked for a stay of the Court's Order, which had not been reduced to writing. The stay was denied and no stay was issued by the Court of Appeals. On February 8, 2008, the Court of Appeals dismissed the appeal. The entities erroneously assert that the appeal itself obviated the obligation to comply with the Consent Order.

The entities contend that because the Court's oral pronouncement on September 7,

10

2007 was not reduced to writing, such order cannot be the basis for a finding of contempt. This claim is true, but is off the mark. The Order from this Court requiring production of the inventory is the original Consent Order, which the entities have violated. The pendency of an appeal did not operate to stay the terms of the Consent Order.

Second, the entities contend that, until the Court issued an order on November 20, 2008, directing that KMPG comply with the orders of the District Court for the Eastern District of Virginia ("EDVA"), they could not turn over the inventory. The EDVA judge partially unsealed the inventory and required that all parties be "bound by the jurisdiction, orders and decrees of this Court." (Order, EDVA, 9-20-2007). Nothing in the Order required KPMG to sign a document prepared by the entities containing the following:

> I, _____, hereby agree to comply with all terms and conditions of the Court's order permitting review of the inventory of the gold specie recovered from the SS *Central America*. I hereby agree to be bound by all prior confidentiality orders of the U.S. District Court for the Eastern District of Virginia. I irrevocably submit to the jurisdiction of this Court with respect to enforcement of those orders.

Further, the proposed declaration added terms not used by the EDVA, and not required by the Consent Order.

To simply break the log jam, this Court issued an Order on November 20, 2008 directing the Defendants to tender the inventory. The Order also provided that, if KPMG decided to review the inventory, it would be bound by the "jurisdiction, orders and decrees" of the District Court in Virginia. (Order, Nov. 20, 2008). The Court strongly disagrees with the entities contention that, until this Order, it could not disclose the inventory to KPMG. At all times since the entry of the Consent Order, KPMG has been bound by a confidentiality provision set forth in Paragraph 7.

11

Further, the entities received the inventory in October of 2007. The inventory was first offered to KPMG ten months later in August of 2008. Only at that time did the entities attempt to require KPMG to sign the declaration, which delayed ultimate receipt by KPMG until late November 2008.

The Court finds that the entities willfully violated the Consent Order of this Court by failing to timely deliver to KPMG documents described in Paragraph 2 of the Order. The Court also finds that the delay added significant cost and delay in completing the audit.

7. Defendants' Claim That They Do Not Possess Marketing Plans, Strategies and Sales Reports.

Alexander's work papers were sought by the Accountants. This Court issued an Order on April 30, 2007 directing that this work papers be produced. On May 17, 2007, Alexander indicated to KPMG that the work papers were ready to be sent. On May 21, 2007, counsel for the entities raised an issue of privilege, thereby preventing disclosure. On September 7, 2007, this Court orally directed that the work papers were to be given to KPMG. The documents were not submitted until August 8, 2008, eleven months later.

The entities contend that, because the oral proceeding on September 7, 2007 was not followed by a written opinion that they cannot be in contempt. This claim is true. What the entities fail to address is the Court's earlier order of April 30, 2007. On that date, the Order noted, "The Defendants have agreed to make available to the accounting firm the work papers maintained by Mr. Alexander." (4/30/07 Order, at p.3.) During the same hearing, counsel for the entities stated that he "was not aware of any privileges" relating to Alexander's work papers. (4/24/2007 Hearing Tr. pgs. 24-26).

12

The April 24, 2007 hearing, which resulted in the Order of April 30, 2007, was convened to address, *inter alia*, Plaintiffs' contention that KPMG had not received a number of documents. The motion and attachments specifically complained that Alexander's work papers had not been received. (Doc. 181-2, Ex. C). The Order of April 30, 2007 resolved the dispute based upon the representation of the entities' counsel.

It is clear that, following the Order of April 30, 2007, the entities did not comply with the Court's order for over eleven months. Such delay was contemptuous and caused additional expense to the Plaintiffs.

### III.

Having found the entities in contempt, the Court next addresses whether the Defendant Directors are also in contempt of this Court's order. It is fundamental law that a corporation, or a limited liability company ("LLC"), can only act through officers or directors. In *Wilson v. United States*, 221 U.S. 361, 376 (1911), the Supreme Court observed that

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

The same is undoubtedly true as to a limited partnership or a limited liability corporation.

While a court order may compel the conduct of a corporation, corporate officers may be held in contempt for failing to comply with the Court's directive. *United States v. Hochschild*, 977 F.2d 208 (6th Cir. 1992). A defendant corporation or LLC and officers and directors must take "all reasonable steps . . . to comply with the court's order." *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989).

13

The officers and directors of the entities had a clear obligation to comply with the Consent Order entered in this case. The Plaintiffs have shown a clear violation of the Order; thereafter, the Defendants must show that they were unable to comply with the order by demonstrating the impossibility of compliance. *United States v. Rylander*, 460 U.S. 752, 757 (1983).

No such showing has been made by the entities nor by the officers and directors. The evidence presented by the officers and directors is minimal at best. The record discloses that no formal meetings were held to establish methods of locating or obtaining documents subject to disclosure by the Consent Order. No evidence of follow up on the delivery of documents was presented. No documentation of steps taken to comply with the Consent Order was made part of the record in this case. No officers or employer was designated to comply with requests, as far as the record indicates.

Instead, the record mainly discloses that Alexander, accountant for the entities, was directed by counsel for RLP and CX, with no direction from the officers or directors. The directions given the accountant, following a number of forewarnings from this Court, have resulted in several previous findings of contempt, as well as the findings herein. The officers and directors were aware of the prior findings of contempt by this Court, yet took no affirmative steps to comply with the Consent Order.

The Court concludes that the individual directors and officers are also in willful contempt of this Court's prior orders.

### IV.

Once willful contempt of court is established, the Court may compel compliance and compensate the complainant. *Electrical Workers Pension Trust Fund of Local Union No.*

*58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 385 (6th Cir. 2003). Plaintiff seeks reimbursement for costs they incurred by way of additional fees charged by KPMG and Plaintiffs' counsel as a result of the Defendants' contemptuous conduct. Plaintiffs seek recovery of additional fees from KPMG in the amount of $290,838 and attorneys fees of $82,180.

The record in this case discloses several years of contentious litigation caused in major part by the refusal of the Defendants to tender documents required to be disclosed to the Accountants by the Consent Order. Shortly after the Consent Order was entered, the Court found CX and RLP in contempt for refusing to tender the inventory of the gold, records of sales, minutes of meetings, and other required documents. (Order, 12/05/06.) In the same Order, the Court reserved for a later date the issue of sanctions, in the vain hope that prompt compliance with the Consent Order would follow.

The Court acknowledges that the fees and expenses sought by the Plaintiffs include the cost of several matters that have not been found to constitute contempt of court, as determined in this Order. Consequently, Plaintiffs are not entitled to the entirety of the costs and expenses alleged. Further, as this Opinion notes, this case has been marked by a great deal of needless contention, which has no doubt added to the fees sought. As a result, there is simply no divining rod the Court can use to precisely measure the additional expenses incurred by the Plaintiffs as a result of the contempt of the Defendants.

Nonetheless, the Court is certain that the Defendants' conduct caused significant delay and expense. The accounting was sandbagged by the Defendants through a variety of means. What should have taken several months has taken several years.

The Court has also reviewed the invoices submitted and finds the expenses are billed as a reasonable and customary rate. The Court concludes that the Defendants are liable for

15

two-thirds of the accounting fees and one-half of the attorneys fees sought. The Court finds the Defendants have willfully violated the prior Orders of this Court. As sanctions for such conduct, the Defendants shall collectively pay to the Plaintiffs $193,892 for accounting fees and $41,090 in attorneys fees.

## V.

Finally, the Court concludes that, after addressing the issue of sanctions and fees, there is no need for future action by this Court regarding the accounting agreed to by the parties. The later claims brought by Donald Fanta and The Dispatch Printing Company have been remanded to the Franklin County Court of Common Pleas. The Defendants' Motion for Satisfaction is GRANTED.

## VI.

The Motion for Damages is **GRANTED IN PART and DENIED IN PART**. It is **ORDERED** that the Defendants shall pay to Donald Fanta and The Dispatch Printing Company $193,892 for accounting fees and $41,090 in attorneys fees. The Defendants' Motion for Satisfaction is **GRANTED**. All motions related to the accounting and satisfaction are **DENIED AS MOOT**, subject to consideration and disposition by the Franklin County Court of Common Pleas.[3]

**IT IS SO ORDERED.**

9-29-2009
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[3]Document Nos. 371, 372, 380, 390, 391, 392, 396, 409, 411, 427, 429, 435, 437 and 442.