IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Michael Williamson, et al., | : | |
| Plaintiffs, | : | Case No. C2-06-292 |
| -vs- | : | Judge Edmund A. Sargus |
| Recovery Limited Partnership, et al., | : | Magistrate Judge Terence Kemp |
| Defendants. | : | |

**<u>PLAINTIFFS' MOTION TO HOLD DEFENDANT THOMPSON IN CONTEMPT</u>**

The Williamson Plaintiffs ("Plaintiffs"), by and through their undersigned counsel, respectfully move this Court pursuant to 28 U.S.C. § 401 to hold Defendant Thomas G. Thompson ("Thompson") in civil contempt for his failure to comply with this Court's Order dated July 18, 2012 [Doc. No. 738] (the "Preliminary Injunction Order") as well as the follow-up Order entered on July 30, 2012 [Doc. No. 748] in that he has failed to provide this Court with the requisite information regarding the status of the 500 commemorative gold coins (or "re-strikes") nor has he provided any of the required information concerning the status of severance trust funds ("Termination Trust") in the original amount of $250,000.00.  Plaintiffs respectfully request that the following sanctions be imposed:

(1) For an order directing Thompson to appear before this Court for questioning, and to produce supporting documentation in connection with such appearance, regarding the restrikes and the Termination Trust, including but not limited to (a) the details of how the restrikes have come to be situated in their present location, (b) the details of the underlying transaction, (c) the beneficiaries, controlling parties, and instructing parties related to the restrikes;

(2) For an order directing the incarceration of Thompson if he does not appear and fully comply with the Court's order directing such appearance, with such incarceration continuing until such time as Thompson fully complies with this Court's Preliminary Injunction Order and any further orders issued by this Court;

(3) For an order enjoining Thompson from conveying, transferring, dissipating or encumbering any property or assets owned by Thompson directly or property in which Thompson has a beneficial interest himself or to which he has provided a direct or beneficial interest to others;

(4) For an order directing Thompson to pay Plaintiffs' reasonable and necessary legal fees and costs for the efforts necessary to pursue this contempt motion; and

(5) For such other and different relief as this Court may deem just and proper.

The grounds for this Motion are discussed more fully in the attached Memorandum in Support and the accompanying Affidavit of Michael R. Szolosi, Sr. dated August 6, 2012 ("Szolosi Aff.").

                                                                                             */s/ Michael R. Szolosi, Sr.*
Michael R. Szolosi, Sr. (0022317)
Of Counsel
McNamara and McNamara, L.L.P.
88 East Broad Street, Suite 1250
Columbus, Ohio 43215
Phone (614) 228-6131/Fax 228-6126
E-Mail: mrs@mcnamaralaw.us
*Counsel for Michael Williamson, Estate of Don C. Craft Kirk O'Donnell, John Lettow, Timothy McGinnis, Fred Newton, William Watson, Chris Hancock, Dale Schoeneman, and International Deep Sea Survey, Inc.*

OF COUNSEL:
Michael J. Frevola
Holland & Knight LLP
31 West 52nd Street, New York, NY 10019

2

#11438872_v1

## MEMORANDUM IN SUPPORT

## PRELIMINARY STATEMENT

Civil contempt is a device that courts are empowered to use to compel compliance with court orders. A party which is affected by another party's contempt has standing to raise the issue with the Court. Here, as discussed below, the relief sought by Plaintiffs is appropriate. Furthermore, in light of Thompson's utter disregard of these proceedings for over six years – most recently his ignoring a twice-repeated order of this Court to provide actual and specific details of the location and underlying details regarding the restrikes and the Termination Trust ordered by this Court – as well as the recent evidence supporting the proposition that Thompson has been involved with the dissipation of Defendants' assets (which evidence is only further supported by Thompson's most recent declaration), the relief sought by Plaintiffs is justified.

## STATEMENT OF FACTS

Plaintiffs recently moved this Court for an order of preliminary injunction and prejudgment attachment against Defendants. [Doc. No. 707]. As a result of that motion, this Court directed that an evidentiary hearing be conducted. After that hearing, this Court issued its Preliminary Injunction Order, which provided, in relevant part, that:

> 2. The Court issues a preliminary injunction against Thomas G. Thompson with regard to the five hundred (500) re-strike or commemorative gold coins transferred to him by Columbus Exploration, LLC. If all or some of these coins are in the physical possession ***or control of Thompson***, he shall: (a) submit within ten (10) days a declaration under oath to this Court indicating such possession or control. He shall indicate in the same declaration the precise location of the coins, and (b) he shall not sell, encumber, transfer or diminish in value such coins.
>
> If such coins are not in Thompson's possession or control, he shall submit a declaration under oath ***describing in detail the parties to whom the coins were transferred, any consideration received or outstanding, the date of such transfer, and the names of the recipients***.

3

#11438872_v1

     3. The Court issues a preliminary injunction against Thomas G. Thompson related to the Termination Trust. In the event that the funds received by Thompson from the Termination Trust are still in his possession, such funds are restrained from any transfer or dissipation of any kind subject to further order of this Court. Thompson shall within ten (10) days file a declaration under oath with this Court indicating if such funds are still in his possession and if so the location of such funds. If such funds are not in his possession he shall ***with as much specificity as practical*** describe the disposition or transfer of such funds.

Preliminary Injunction Order, at 1-2 (emphasis added).

Thompson did not submit the declaration ordered by this Court within the required ten days. Rather, he filed an extension request to submit that declaration later [Doc. No. 741], which this Court denied [Doc. No. 748]. In denying that extension request, this Court made clear the consequences that would occur if Thompson did not comply with the Court's order:

> The Court finds no merit to the motion, which was filed one day before the date the affidavit was due. Thompson provides no sworn statement to support his position. The excuse that Thompson is out to sea has been used repeatedly in this case. Thompson has never yet appeared in this case's six year history. Thompson has not made this Court's orders a priority.
>
> Thompson is **ORDERED** to file the affidavit by Friday, August 3, 2012, ***or this Court will initiate contempt proceedings***.

*Id.* at 1 (emphasis added).

At 11:47 p.m. on Saturday, April 4, 2012, the attorney for Defendants Recovery Limited Partnership, Columbus Exploration, LLC, and Columbus-America Discovery Group, Inc. filed a document titled "Notice of Submission of Declaration of Thomas G. Thompson," which states that Thompson's declaration "was electronically transmitted ***to chambers*** . . . ." [Doc. No. 754] (emphasis added). On Sunday, August 5, 2012, only upon demand by Plaintiffs' counsel, did Defendants' counsel provide a copy of Thompson's declaration to Plaintiffs. Review of that declaration, which spends only 7 sentences on the information ordered to be produced, shows

4

#11438872_v1

that the information provided fails to comply with this Court's Preliminary Injunction Order and subsequent order. As Thompson clearly refuses to heed this Court's orders and continues to play by his own rules, this Court is empowered to act in response to protect its authority and to find Thompson in contempt for his continued refusal to obey this Court's orders.

## ARGUMENT

## POINT I

## A FINDING OF CIVIL CONTEMPT IS APPROPRIATE

A.     **Plaintiffs Have Standing to Seek the Contempt Order**

Civil contempt has been described by one treatise as follows:

> Civil contempt occurs when a person does not comply with a court order, and an action ***is brought by a party to enforce rights under the order that has been violated***. Civil contempt proceedings may normally be initiated only by the aggrieved party or by one who has an interest in the right to be protected. . . .
>
>          * * *
>
> To be authorized to initiate contempt proceedings based on the violation of an order, one must meet two requirements: (1) possession of a legally recognized interest in the order, for instance, as ***the party for whose benefit the judgment or order was made***, or as a successor in interest to such party; and (2) aggrievement, that is, ***injury caused by the alleged violation***.

Laura Hunter Dietz *et al.*, 17 Am. Jur. 2d Contempt § 150 (May 2012) (internal footnotes omitted) (emphasis added).

  Here, this Court issued the Preliminary Injunction Order in response to Plaintiffs' request for the preservation of Defendants' assets. As discussed below, that Preliminary Injunction Order specifically directed Thompson to provide specific information regarding the restrikes and the Termination Trust, which information Thompson has failed to provide and which (in light of the circumstances under which the assets are located) he clearly does not wish to provide. Thompson's failure to provide the relief ordered by the Court – specifically by failing to provide

5

#11438872_v1

the underlying details with sufficient specificity to comply with this Court's orders – leaves Plaintiffs as the aggrieved party. Therefore, Plaintiffs have standing to seek a civil contempt order from this Court.

### B.     Thompson Has Failed to Comply With This Court's Orders

During oral argument before the Sixth Circuit, the Dispatch Plaintiffs' attorney, Steven Tigges, Esq., stated that "I've learned through experience, Your Honor, that in this case especially, *we need to listen carefully to words that are used* [by Defendants]." Transcript of Oral Argument, *Williamson v. Recovery Ltd. P'ship*, Case No. 09-4253/55 (6th Cir. Jan. 12, 2011), at 33 (emphasis added). The Defendants' use of half-truths and ambiguous language is by no means a recent development. They misrepresented the status of their equipment in order to use the maritime Rules of the Road to ward off a competitor at the *S.S. Central America* wreck site. They failed to apprise the Eastern District of Virginia that the artifacts recovered and produced to the court were recovered from a different location than where the court-ordered injunction box was located. The judge that replaced Judge Kellum in the Eastern District of Virginia salvage litigation found that Defendants "misled the court," was disturbed by their "lack of integrity":

> Christie's, the famous New York auction house, was hired to sell part of the gold, but *a Norfolk judge voided the contract last year, saying Columbus-America had misled the court about the sale*.
>
> As a result, Christie's now has a $43 million claim on the gold and is trying to seize the treasure from Columbus-America. A lawsuit is pending in New York.
>
> The Norfolk federal judge, J. Calvitt Clarke Jr., *is furious with Columbus-America. He disqualified the company from marketing all of the gold last year, saying he was disturbed by the company's "lack of integrity."*
>
> <div align="center">*  *  *</div>
>
> *Judge Clarke became furious when he learned of the Christie's deal. He said it violated a previous marketing order that Columbus-America could sell only a certain part of the gold*.

6

#11438872_v1

> Last May, Clarke ordered Columbus-America to bring Christie's to the Norfolk courthouse. When Christie's failed to appear, Clarke slammed Columbus-America.
>
> *"It became unmistakably clear that (Columbus-America) has not been forthright with the court, underwriters or Christie's in its activities to market and sell"* the gold, Clarke wrote.
>
> He ruled that Columbus-America *"is disqualified or not qualified by reason of the lack of integrity"* for failing to keep him informed, for signing the Christie's contract in violation of his previous order, and *for failing to come up with a plan to sell the gold after "years and years and years" as the gold's sole marketer.*
>
> *"For all those reasons . . . I still think and still hold that (Columbus-America) is not competent to handle the treasure,"* Clarke concluded.
>
>                                      \*   \*   \*
>
> . . . Columbus-America wants to release the inventory in stages over five to seven years, as the gold is sold. That would "build public excitement," culminating in a "media blitz" just before each auction sale, the company argues in court papers.
>
> In Norfolk, Judge Clarke disagreed. He ordered the inventory unsealed last July. *"Whatever the court's appropriate role"* in the gold sale, *"it is not to conceal information from the public in an effort to artificially enhance the price of the salvaged items," he wrote.*

[*See* Doc. No. 18, Ex. 2] (Marc Davis, *Dispute Over Sunken Treasure Wages On 10 Years After Discovery*, THE VIRGINIAN-PILOT (Norfolk, VA), March 7, 1999, at A4-A5) (emphasis added).

Last June, in the Eastern District of Virginia, Judge Rebecca Beach Smith, the third judge assigned to the salvage litigation docket, stated as follows in response to testimony offered by director Gilman D. Kirk, Jr. to support keeping the Treasure inventory under seal:

> I haven't seen anything in that inventory that relates to anything that you are talking about. I have the inventory right in there, locked in my chambers, and I have to tell you that there is nothing in that inventory that relates to what you are saying is a reason. I have looked at it. I have looked at it myself, and ***I can tell you I feel one hundred percent sure that there is nothing in there that relates to those matters that you have just said***, so I don't understand that testimony.

[Doc. No. 653, at 36] (Transcript of Hearing, *Columbus-America Discovery Group, Inc. v. The Unidentified & Abandoned Sailing Vessel*, Civ. Act. No. 2:87cv363 (E.D. Va. June 3, 2011)) (emphasis added).

7

This past few weeks, it has been asserted repeatedly that Thompson was "at sea" and unable to provide the declaration required by this Court. But then Plaintiffs demonstrated that the suggestion that the Thompson was "at sea" – even though no filings had been made in the Virginia court and even though the Defendants' vessel was sunk at the bottom of a river in Florida – was ludicrous. This Court then made clear that it would not give the requested extension and that it did not find Thompson's "at sea" excuse to warrant an extension, and that this Court would institute contempt proceedings against Thompson if he failed to provide his declaration as ordered. After that order, Mr. Thompson miraculously was able to be available to provide his declaration. This conduct shows that these Defendants, and especially Mr. Thompson, will not heed Court orders unless they are threatened with contempt.

Turning to Thompson's declaration, close inspection of his declaration shows that the equivocation and half-truths common to these Defendants likewise are once again at work. When we "listen carefully to words that are used," as advised by Mr. Tigges, the need for further information from Thompson is apparent.

This Court's Preliminary Injunction Order required Thompson to provide the following information in his declaration:

(1) Identify whether he is in physical possession or ***control*** of the restrikes; and

(2) Indicate the ***precise location*** of the coins;

or

(3) Describe in detail the parties ***to whom*** the coins were transferred; and

(4) Describe any consideration received ***or outstanding***; and

(5) Provide the ***date*** of the transfer; and

(6) Provide the ***names of the recipients***.

8

#11438872_v1

The Preliminary Injunction Order also directed Thompson to:

(7)     Indicate whether any of the Termination Trust funds are still in his possession; and

(8)     If the Termination Trust funds no longer are in his possession, Thompson shall **_with as much specificity as practical_** describe the disposition or transfer of such funds.

Turning to each of the items listed above, Plaintiffs will discuss why Thompson declaration fails to comply with this Court's Preliminary Injunction Order.

1.      ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████

████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

[redacted]

[redacted]

[redacted]

[redacted]

███████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████

███████████████████████████████

█████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████

███████████████████████████████

████████████████████████████████

#11438872_v1

███████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████

███████████████████████

███████████████████████████████████

█████████████████████████████████

████████████████████████████████████
████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████

Moreover, Thompson's suggestion that he no longer has the restrikes or the Termination Trust completely is at odds with the stay application made by Defendants a few days ago. In that stay motion, Defendants stated that the Court's Preliminary Injunction Order freezing the assets

12

#11438872_v1

identified (the restrikes and the Termination Trust) would cause the following types of "irreparable harm":

> These assets—frozen by the District Court—*are rendered almost useless to the Defendants in attempting to run their ongoing business*. . . . The time and expense required to obtain court approval *for the use of these assets either as operating funds or collateral* has a chilling effect on the ability to use the assets at all.  This is particularly damaging considering that the District Court has attached *all* assets of the company, save for funds required to pay usual bills such as rent and telephone service.  The injury is thus substantial and not just likely, but certain to occur.
>
> Additionally, CXLLC has a vested interest in Mr. Thompson *retaining his compensation* which was due and owing in conjunction with his role as Chairman and per the terms of CXLLC's Operating Agreement which was approved by the partners and members.  CXLLC is benefited by Mr. Thompson's continuing under contract with CXLLC.  Mr. Thompson is current owed past due and ongoing compensation.

[Doc. No. 752, at 6] (emphasis added).  The foregoing passage suggests that (1) the restrikes and (2) the Termination trust remain in Mr. Thompson's or CXLLC's beneficial (at the least) control.  Otherwise, how does the stay application make any sense?  How can the restrikes and Termination Trust act "either as operating funds or collateral" if they are gone?  Similarly, how does the Preliminary Injunction Order interfere with the Defendants' "ongoing business" or impact Thompson's "compensation" if those assets are gone?

      The fact that Defendants have recently filed a pleading which contradicts Thompson's now-filed declaration continues to show that Defendants' submissions must be viewed with more than a grain of salt.  Certainly this Court is entitled to view documentation which supports Thompson's assertions.  This is even more so because Defendants have been able to keep their accounting data sacrosanct for years even though Plaintiffs have now demonstrated the existence of asset dissipation.

13

#11438872_v1

8. <u>If the Termination Trust funds no longer are in his possession, Thompson shall with as much specificity as practical describe the disposition or transfer of such funds</u>



Thompson still continues to think that he can do as he pleases, and only submitted his declaration (which is ambiguous and non-responsive at best) after this Court stated that a failure to submit the declaration would result in the initiation of contempt proceedings. Sufficiency of compliance should not be Thompson's decision to make:

> There is no right of revolution in a United States District Court. The lawyer's duty is not to defy the judge's orders, but to follow them. It is true enough that judges, like other humans, will make mistakes, and that those mistakes will sometimes be to the detriment of a client's rights. But that is what Circuit Courts exist to remedy. "Lawyers are required to obey even incorrect orders; the remedy is on appeal." *In re Dellinger*, 502 F.2d 813, 816 (7th Cir. 1974). ***We entirely agree with Judge Greer that "someone must be in control of what happens in a courtroom[,]" and that the someone is "the trial judge, not the lawyer for a criminal defendant nor the lawyer for the United States."***

*In re Moncier*, No. 09-5227, 2012 WL 2301647, at *2 (6th Cir. June 18, 2012) (emphasis added) (quoting *U.S. v. Moncier*, 571 F.3d 593, 599 (6th Cir. 2009)).

By filing his declaration in the form that has been provided, Thompson once again refuses to provide responsive information to a direct order of this Court. While this may be

14

#11438872_v1

exactly what Thompson desires, Thompson does not make the rules.  This Court should order Thompson to appear before the Court for questioning on the details concerning the restrikes and the Termination Trust, and for Thompson to bring documentation regarding those assets (rather than Thompson appearing merely to provide useless testimony).  Specifically, Thompson should be required (at the least) to bring the following documents:

(1)    Shipping documents regarding the transfer of the restrikes from California Gold Marketing Group, LLC to Thompson (and/or other Defendants) or from California Gold Marketing Group, LLC ████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

(3)    Thompson's bank records showing the bank account at which he received the Termination Trust and monthly account statements showing account activity on that account (Plaintiffs likewise request that the Court order CXLLC to produce its bank statement or other records showing to where the Termination Trust was sent when it was released to Thompson); and

(4)    Receipts or other proofs of purchase (through bank statements, credit card records, or similar records) showing Thompson's expenditures or financial outlays for amounts greater than $5,000.

#11438872_v1

If Thompson refuses to appear before this Court or fails to bring the ordered documentation, then this Court should find Thompson in civil contempt and order his incarceration until he finally produces responsive evidence regarding these assets.

C.  **Thompson's Failure to Comply With This Court's Orders is Contumacious**

Title 28, United States Code provides U.S. District Judges with the following powers to punish contempt:

> **§ 401. Power of court**
>
> A court of the United States shall have power to punish **by fine or imprisonment, or both**, at its discretion, such contempt of its authority, and none other, as –
>
> **(1)** Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> **(2)** Misbehavior of any of its officers in their official transactions:
>
> **(3)** *Disobedience or resistance to its lawful writ, process, <u>order</u>, rule, decree, or command*.

28 U.S.C. § 401 (emphasis added). In this case, this Court has twice ordered Thompson to submit the required declaration, the second time with a warning that Thompson's failure to do so will result in the Court's initiation of contempt proceedings. Thompson nevertheless has failed to comply with those orders and instead submitted a deficient declaration. Hence, an order of contempt against Thompson is appropriate.

D.  **Civil Contempt is an Appropriate Remedy**

Civil contempt is designed to compel the party held in contempt to purge his/her contempt and comply with the order that he/she is violating:

> "A contempt order or judgment is characterized as either civil or criminal depending upon its primary purpose. If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. *If the purpose of the sanction is to <u>coerce the</u>*

16

> *contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil.*"
> *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990) (internal citations omitted). Imprisonment is an appropriate remedy for either civil or criminal contempt, depending on how it is assessed. If the prison term is conditional and coercive, the character of the contempt is civil; if it is backward-looking and unconditional it is criminal. *See generally Shillitani v. United States,* 384 U.S. 364, 366, 368, 86 S.Ct. 1531, 16 L.Ed. 2d 622 (1966) (holding that prison sentence of two years with automatic release upon compliance with court's decree indicated civil contempt). Similarly, a lump sum fine that punishes past conduct is criminal, while a fine that accrues on an ongoing basis in response to noncompliance is civil. *Compare Am. Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 527, 530-31 (5th Cir. 1992) (discussing imposition of criminal fine) *with Hunt v. Hunt (In re Hunt)*, 754 F.2d 1290, 1293 (5th Cir. 1985) (discussing imposition of civil fine).

*In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) (emphasis added).

In *United Mine Workers v. Bagwell*, 512 U.S. 821 (1994), the United States Supreme Court explained classic examples of civil contempt orders:

> The paradigmatic coercive, civil contempt sanction, as set forth in *Gompers* [*v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911)], involves confining a contemnor indefinitely until he complies with an affirmative command such as an order "to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance." 221 U.S., at 442, 31 S.Ct., at 498; *see also McCrone v. United States*, 307 U.S. 61, 64, 59 S.Ct. 685, 686, 83 L.Ed. 1108 (1939) (failure to testify). Imprisonment for a fixed term similarly is coercive when the contemnor is given the option of earlier release if he complies. *Shillitani v. United States*, 384 U.S. 364, 370, n. 6, 86 S.Ct. 1531, 1536, n. 6, 16 L.Ed.2d 622 (1966) (upholding as civil "a determinate [2-year] sentence which includes a purge clause"). In these circumstances, the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus "'carries the keys of his prison in his own pocket.'" *Gompers*, 221 U.S., at 442, 31 S.Ct., at 498, quoting *In re Nevitt*, 117 F. 448, 451 (CA8 1902).

*United Mine Workers v. Bagwell*, 512 U.S. 821, 828 (1994).

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████

Here, however, Plaintiffs are not requesting that this Court find Thompson in criminal contempt. Rather, Plaintiffs request a finding of civil contempt, which finding does not require the same due process issues nor does it require trial. As the Supreme Court has said, this is because "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus ' 'carries the keys of his prison in his own pocket.' ' " *Id.*

## CONCLUSION

Because Thompson's declaration essentially provides none of the information that this Court's Preliminary Injunction Order directed him to provide, Plaintiffs respectfully request the Court grant their motion and issue:

(1) An order directing Thompson to appear before this Court for questioning, and to produce supporting documentation in connection with such appearance, regarding the restrikes and the Termination Trust;

(2) An order directing the incarceration of Thompson if he does not appear and fully comply with the Court's order directing such appearance, with such incarceration continuing until such time as Thompson fully complies with this Court's Preliminary Injunction Order and any further orders issued by this Court;

(3) For an order enjoining Thompson from conveying, transferring, dissipating or encumbering any property owned by Thompson directly or property in which Thompson has a beneficial interest himself or to which he has provided a direct or beneficial interest to others;

(4) An order directing Thompson to pay Plaintiffs' reasonable and necessary legal fees and costs be imposed for the efforts necessary to pursue this contempt motion; and

(5) Any other and different relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ Michael R. Szolosi, Sr.*
Michael R. Szolosi, Sr. (0022317)
Of Counsel
McNamara and McNamara, L.L.P.
88 East Broad Street, Suite 1250
Columbus, Ohio 43215
Phone (614) 228-6131/Fax 228-6126
E-Mail: mrs@mcnamaralaw.us
*Counsel for Michael Williamson, the Estate of Don C. Craft, Kirk O'Donnell, John Lettow, Timothy McGinnis, Fred Newton, William Watson, Chris Hancock, Dale Schoeneman, and International Deep Sea Survey, Inc.*

OF COUNSEL:
Michael Frevola
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019
Phone (212) 513-3561/Fax 385-9010

#11438872_v1

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served on all counsel of record via the Court's electronic filing system on the 6th day of August, 2012.

> */s/ Michael R. Szolosi, Sr.*
> Michael R. Szolosi, Sr. (0022317)

#11438872_v1