IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Michael Williamson, et al., | : | |
| Plaintiffs, | : | Case No. C2-06cv292 |
| -vs- | : | Judge Algenon L. Marbley |
| Recovery Limited Partnership, et al., | : | Magistrate Judge Terence Kemp |
| Defendants. | : | |

**REPLY MEMORANDUM OF
DEFENDANTS RECOVERY LIMITED PARTNERSHIP
AND COLUMBUS EXPLORATION, LLC
IN SUPPORT OF THEIR MOTION (DOC. #886)
TO VACATE PARAGRAPHS 1 AND 5 OF THE COURT'S
JULY 18, 2012 ORDER (DOC. #738) AND TO REMAND
THE WILLIAMSON PLAINTIFFS' REMAINING
CLAIM TO FRANKLIN COUNTY COMMON PLEAS COURT
FOR RESOLUTION IN THE PENDING RECEIVERSHIP**

I.  **INTRODUCTION**

The Williamson plaintiffs have not provided this Court with any legitimate reason why their claims should remain here. It is hard to understand why they oppose having their claims heard in the only forum where they might be made whole. If the Receiver is successful in recovering the Down Treasure, the Williamson plaintiffs will be paid whatever amount they are owed. If the Down Treasure cannot be recovered, the likelihood of them recovering anything on their claims is unlikely.

(A)  **Franklin County Common Pleas Court Has Concurrent
Jurisdiction Over All Of The Williamson Plaintiffs' Claims**.

In opposing the motion, the Williamson plaintiffs state that "it is questionable as to whether concurrent jurisdiction exists" (Doc. #894 at p. 16), even though they initially filed these

claims in Franklin County Common Pleas Court. They do not cite any legal authority contrary to the dispositive Sixth Circuit case cited by the Defendants in their initial memorandum for the proposition that Franklin County Common Pleas Court has jurisdiction over their maritime breach of contract claims.[1]

The Williamson plaintiffs insist that the Common Pleas Court would not have jurisdiction over their claims against defendants other than RLP and CX.[2] If this Court remanded all their claims, jurisdiction over the other defendants would also be transferred to Common Pleas Court. Seven of them already have claims pending against them in that court, including Thomas G. Thompson and the same directors that the Williamson plaintiffs had sued.[3] The remaining five (really, three) defendants are entities formed by Mr. Thompson who are no longer represented by legal counsel and are no longer in business.[4] As a practical matter, the Williamson plaintiffs' prospect of ever recovering anything from them is remote.

---

[1] Doc. #886 at p. 2, n. 1(e), repeated here: *In re Dale Chimenti, et al*., 79 F.3d 534, 536 (6th Cir. 1996) (citing *Madruga v. Superior Court of California*, 346 U.S. 556, 560-61 (1954)).

[2] This Court earlier held defendant Columbus Exploration Limited Partnership to be the same as CX (Doc. #646, p. 42).

[3] Gilman D. Kirk, Jr., James F. Turner, Michael J. Ford and W. Arthur Cullman, Jr. (Doc. #176, p. 1.) On June 3, 2011, however, this Court granted summary judgment against the Williamson plaintiffs on their claims against Kirk, Turner, Ford and Cullman, Jr. (Doc. #646, p. 27).

[4] This Court determined that four of the entities are really two "pairs" of entities that should be considered one and the same (Doc. #646 at p. 42). Economic Zone Resource Associates, Inc. (aka Economic Zone Resource Associates, Ltd.) was cancelled as a business entity in January of 2004 (*Id.* at p. 5). EZRA, Inc. (aka EZRA of Ohio, Inc.) was also cancelled as a business entity in January of 2004, according to the Ohio Secretary of State. Legal counsel withdrew from representing them in this case on either September 12, 2008 (Doc. #332) or June 12, 2011 (Doc. #663). The remaining entity is Columbus-America Discovery Group, Inc. Its counsel was granted leave to withdraw on November 15, 2013 (Doc. #887).

### (B) The Receivership Is Under The Supervision Of The Franklin County Common Pleas Court And Is For The Benefit Of All Creditors.

In opposing the motion, the Williamson plaintiffs also mischaracterize the nature and focus of the Receivership. Without any legitimate basis, they assert that "the problems caused by prior management still remain,"[5] that "the Moving Defendants have spent hundreds of thousands of dollars in expenses without … giving the Williamson Plaintiffs an opportunity to object to the spending,"[6] that the Receivership "is in fact an ***equity-driven*** proceeding that seeks to subordinate true creditors' claims to those of the equity interests"[7] before "a state court unfamiliar with the lengthy procedural record of this case,"[8] that the only creditor claims being considered are those of insiders,[9] and that the Receiver has the unfettered "right to reject creditors' claims."[10]

The Common Pleas Court may be unfamiliar with the procedural record in this case, but it is intimately familiar with the background of this dispute and all the parties. The consolidated cases have been pending in Common Pleas Court since 2005 and a fifteen (15) day evidentiary hearing preceded the appointment of the Receiver.

The Receiver was appointed precisely because of "the problems caused by prior

---

[5] Doc. #894 at p. 6.

[6] *Id.* at p. 8.

[7] *Id.* at p. 3.

[8] *Id.* at p. 4.

[9] *Id*. at p. 3.

[10] *Id*. at p. 14.

management,"[11] and with the specific goal of "preserv[ing] and operat[ing] the businesses of RLP and CXLLC … for the benefit of the investors <u>and creditors</u>."[12] The Receiver is an extension of the Common Pleas Court itself, and is subject to its order and direction.[13] The "Moving Defendants" have not spent any money. It is the Receiver who incurred and paid expenses but only with Common Pleas Court approval after notice to all counsel, including the Williamson plaintiffs' local counsel. If the Williamson plaintiffs wished to object to any expenditure by the Receiver, they could have done so.

The Receivership is not an "equity-driven proceeding intended to subordinate true creditors' claims to those of the equity interests, … ." The Receiver's Plan approved by the Common Pleas Court on October 10, 2013[14] (the "Plan") describes an even-handed process by which *anyone* who claims to be owed money by RLP and CX can submit a claim along with substantiating documentation by January 7, 2014.[15] On November 20-21, 2013, notice of the claims process was sent to thirty-six (36) potential creditors that could be identified from the financial records of RLP and CX.[16] The notice instructs the recipient <u>not</u> to respond if they have

---

[11]  June 14, 2013 Entry Appointing Receiver (Doc. #886-1, p. 2) (" … the state of [RLP and CX] is essentially that of great disarray and insolvency, coupled with a lack of functional management.").

[12]  Receiver's Initial Receivership Plan and Report, Doc. #886-2, p. 8 (emphasis added).

[13]  *Park National Bank v. Cattani, Inc.*, 187 Ohio App.3d 186, 188, 2010-Ohio-1291, ¶10 (12th Dist. No. CA2009-09-128) ("[a] receiver … is 'an officer of the court and at all times subject to its order and direction.'") (citations omitted); *McGinness v. United States*, 90 F.3d 143, 145 (6th Cir. 1996) (citations omitted) ("Ohio courts have described a receiver as 'merely the administrative arm of the court ... .'").

[14]  Doc. #886-2, p. 3.

[15]  Doc. #886-2, pp. 16-17; Doc. #900, p. 8.

[16]  Attached Declaration of James J. Henson, ¶¶ 2-3.

an "equity interest in RLP or CX."[17] The notice was sent to all potential creditors that could be identified, whether insiders or not.[18] In addition to the Williamson plaintiffs, there were eleven (11) other potential creditors who cannot be characterized as insiders.[19] At the same time, ads were ordered placed in *The Columbus Dispatch* and *Wall Street Journal* to provide general notice to all other potential creditors of RLP or CX to file their claims.[20]

As reflected in the Plan, the claims of all creditors -- insider or not -- will be determined under the supervision of Common Pleas Court. Under the Plan, the Receiver can only reject a claim "with the approval of the Court," payment of any claim will be on "terms" either "negotiated by the Receiver" or "as the Court deems appropriate," and payments from the Down Treasure require the "prior approval of the Court."[21]

## II. THIS COURT SHOULD EXERCISE ITS DISCRETION TO VACATE PARAGRAPHS 1 AND 5 OF ITS JULY 18, 2012 ORDER (Doc. #738).

In a trilogy of cases decided during the Great Depression, the United States Supreme Court held that a federal district court should refrain from exercising jurisdiction over property when to do so might interfere with the administration of the same property by a state court or official:

(1) In the *Penn Central Casualty* case, even though the district court had first

---

[17] Exhibit 1 to Henson Dec.

[18] Henson Dec. at ¶3.

[19] *Id*.

[20] Henson Dec. at ¶4.

[21] Doc. #886-17.

-5-

acquired jurisdiction over the property, the Court held that the district court should exercise its "discretion, to relinquish the jurisdiction in favor of the administration by the state officer;"[22]

(2) In the *Williams, et al., Receivers* case,[23] the Commonwealth of Pennsylvania sought an order directing the receiver who had already been appointed by the federal court to surrender the assets of an insolvent building and loan association to the State Secretary of Banking.[24] Although the district court had proper jurisdiction, the Court held that its "discretion … should have been exercised to relinquish the jurisdiction in favor of the statutory administration of the corporation assets by the state officer;"[25]

(3) Dispositive in the *Bank of New York* case[26] was a concern about persons with an interest in the property who were not parties to the federal action. In that case, the United States sought delivery of funds deposited for its benefit by the Russian government when three Russian insurance companies doing business in New York were dissolved in the wake of the

---

[22] *Penn Central Casualty Co. v. Pennsylvania Ex Rel. Schneider*, 294 U.S. 189 (1935), also discussed in defendants' initial memorandum at pp. 5-7.

[23] *Pennsylvania v. Williams, et al., Receivers*, 294 U.S. 176 (1935).

[24] 294 U.S. at pp. 178-179.

[25] 294 U.S. at p. 183.

[26] *United States v. Bank of New York*, 296 U.S. 463 (1936).

Russian Revolution.[27] The insurance companies were parties to pending state liquidation proceedings. In affirming dismissal, the Supreme Court held that "… numerous persons whose claims in relation to these funds … are entitled to be heard [but] … have not been made parties to the present suits, and <u>this fact alone would be a sufficient reason for the District Court to refuse to proceed in their absence</u>."[28]

As in the *Bank of New York* case, there are other creditors and stakeholders with claims to the assets of RLP and CX, but who are not parties to this case. Like the district courts in that case, and in *Penn Central*, and *Williams et al., Receivers*, this Court should exercise its discretion to vacate paragraphs 1 and 5 of its July 18, 2012 order to facilitate the orderly administration of the receivership for the benefit of creditors and stakeholders who are not parties to this proceeding, as well as the Williamson plaintiffs.

In response to this compelling precedent, the Williamson plaintiffs cite the *Harkin* case for the proposition that "a creditor which obtains attachment of a debtor's property before appointment of a receiver does not have to surrender the attachment."[29] *Harkin* did not involve an attachment but instead, parallel receivership proceedings involving the same corporation -- one filed in state court and the other filed in federal court.[30] In that case too, the Supreme Court held that the federal district court should defer to the state receivership and refrain from

---

[27]      296 U.S. at pp. 334-335.

[28]      296 U.S. at p. 340 (emphasis added).

[29]      Doc. #894 at p. 5.

[30]      *Harkin v. Brundage*, 276 U.S. 36, 38-41 (1928).

exercising jurisdiction. The Supreme Court did not need to reach the issue of whether the federal court should refrain from exercising its jurisdiction because the state receivership proceeding was filed first. It addressed that precise issue in the three cases decided seven (7) years after *Harkin*, holding that a district court should refrain from exercising its jurisdiction over property within the control of a state court or officer, whether it first acquired jurisdiction over the property or not.[31]

### III. THIS COURT SHOULD REMAND ALL OF THE WILLIAMSON PLAINTIFFS' CLAIMS TO FRANKLIN COUNTY COMMON PLEAS COURT.

The Williamson plaintiffs cannot legitimately argue that "there is no parallelism between this dispute and the State Court Proceedings."[32] As the Sixth Circuit emphasized in the *Romine* case, "it is enough if the two proceedings are substantially similar."[33] The Williamson plaintiffs' core claim for breach of contract is pending in both proceedings. Claims against other potentially collectible defendants (Mr. Thompson and the Directors) are pending in both proceedings. Default judgments against the remaining defunct entities could be obtained in either court.

The Williamson plaintiffs make no effort to distinguish the recent decision by the United

---

[31] As the Supreme Court noted in the *Williams et al., Receivers* case, the district court had relied upon *Harkin* in denying the Commonwealth of Pennsylvania's request to vacate its order, placing the company under the control of a federal receiver. In reversing the district court, the Supreme Court held that it should have refrained from exercising its jurisdiction. 294 U.S. at pp. 179-180.

[32] Doc. #894 at p. 15.

[33] *Romine v. CompuServe Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (quoting *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 817 (1976)).

States District Court for the Northern District of Ohio to remand claims related to a pending receivership to the common pleas court where it was pending.[34] As in that case, the factors identified by the United States Supreme Court in *Colorado River* strongly support abstention and remand:

- ***The Franklin County Common Pleas Court Has Concurrent Jurisdiction Over All The Williamson Claims For Money Damages***.  As demonstrated earlier, the Common Pleas Court has concurrent jurisdiction over the Williamson plaintiffs' admiralty breach of contract claim.  Upon remand, it can exercise jurisdiction over the other claims against related parties.

- ***The Law Governing The Williamson Plaintiffs' Claims Does Not Require The Expertise Of This Court***.  There are no issues of federal law requiring this Court's expertise.  Their main claim is grounded on admiralty law, but is a garden variety breach of contract claim.  Only straight forward issues on the amount of damages remain.[35]  Issues on claims against Mr. Thompson or his defunct entities are state law issues such as "alter ego" or "piercing the corporate veil."[36]

- ***Therefore, Remanding All The Williamson Plaintiffs' Claims To Common Pleas Court Will Eliminate Piecemeal Litigation***.

- ***The Franklin County Common Pleas Court Assumed In Rem Jurisdiction Over***

---

[34] *Browning v. Gotham King Fee Owner, LLC*, Case No. 1:13CV1549, 2013 U.S. Dist. LEXIS 126072 (N.D. Ohio; Sept. 4, 2013).

[35] *See* Doc. #646 at p. 51 (triable issues of fact identified by this Court in its Order on Summary Judgment).

[36] *Id*.

***All The Assets Of RLP And CX.*** Through its entry appointing the receiver, the Common Pleas Court assumed *in rem* jurisdiction over all the property belonging to RLP and CX, including the Down Treasure.[37] This case, however, is an *in personam* action by the Williamson plaintiffs for a money judgment against RLP, CX, and others based on claims for breach of contract. This case did not become an *in rem* or *quasi in rem* action by virtue of the July 18, 2012 pre-judgment attachment order (Doc. #738). The United States Supreme Court held that prejudgment attachment of property as security for a money judgment against a person or entity is *in personam* in nature, not *in rem*.[38]

- ***The Common Pleas Action Has Been Pending Longer And The Williamson Plaintiffs' Core Claim For Breach Of Contract Will Be Determined By The Common Pleas Court After Claimants Have Submitted Their Documentation***. The Common Pleas action has been pending longer than this case. With the appointment of a Receiver, and the approval of the Plan, a process to resolve claims was established that will be concluded after claimants submit their claims and substantiating documentation.

- ***The Franklin County Common Pleas Court Will Protect The Williamson Plaintiffs' Opportunity To Satisfy Their Claim From The Down Treasure.*** The

---

[37] *Republic Bank of Chicago v. Lighthouse Management Group, Inc*., 829 F.Supp.2d 766, 774 (D. Minn. 2010).

[38] *F.T Rounds v. Cloverport Foundry & Machine Company*, 237 U.S. 303, 306 (1915); *Pacific Coast Pipe Co. v. Conrad City Water Co.*, 237 F. 673, 675-676 (D. Mont. 1916). A fuller analysis of these cases and relevant quotations appear in Defendants' Memorandum in Opposition to the Williamson Plaintiffs' Motion for a Temporary Restraining Order and/or for Preliminary Injunction (Doc. #900), at pp. 4-6.

Williamson plaintiffs can only share in the Down Treasure through the receivership.[39] The amount of their claim for breach of contract is subject to the approval of Common Pleas Court and "actual payments … from the proceeds of recovery of the Down Treasure … [to them and others] will be subject to the specific prior approval of the Court [of Common Pleas] at that time.[40]

IV. **CONCLUSION**

Accordingly, the defendants request that the Court vacate paragraphs 1 and 5 of its pre-judgment attachment order (Doc. #738) and remand all of the Williamson plaintiffs' claims for disposition in the Franklin County Common Pleas consolidated cases 05CVH04-4220, 05CVH10-11795, and 06CVH03-4469.

Respectfully submitted,

/s/ James S. Savage
James S. Savage, Trial Attorney  (0019292)
jssavage@earthlink.net
McFadden Winner Savage & Segerman, LLP
175 South Third Street, Suite 350
Columbus, OH 43215
Phone (614) 221-8868/Fax 221-3985
*Counsel for Defendants Recovery Limited Partnership and Columbus Exploration, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of December, 2013, a copy of the foregoing Reply Memorandum was filed electronically.  Notice of this filing will be sent by operation of the

---

[39] *Modart, Inc. v. Penrose Industries Corporation*, 293 F.Supp. 1116, 1120 (E.D. Pa. 1967).

[40] Doc. #886-2, p. 17.

-11-

court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

                                               /s/ James S. Savage
                                               James S. Savage