IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL WILLIAMSON,** *et al.*, | : | |
| | : | Case No. 2:06-cv-00292 |
| **Plaintiffs,** | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | |
| **RECOVERY LIMITED** | : | Magistrate Judge Kemp |
| **PARTNERSHIP,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before the Court on Attorney Richard Robol's "Motion to Dismiss the 'Sanctions Motion' filed against him." (Doc. 893). On October 16, 2013, Plaintiff Dispatch Printing Company ("DPC" or "Dispatch") filed a Motion for Sanctions (Doc. 871) against Defendants Thompson, Kirk, and Ford, as well as against Attorney Robol, former counsel for Defendants Recovery Limited Partnership ("RLP") and Columbus Exploration, LLC ("CX"). As part of its Plenary Order (Doc. 887), the Court severed the Motion as against Defendant Thompson, holding that portion in abeyance until such time as Thompson appears before the Court. The Court also permitted Attorney Robol to file a motion challenging whether he was properly the target of a sanctions motion (*Id.* at 4), which he has now done. DPC responded in opposition on December 11 (Doc. 895) and Robol replied on December 18 (Doc. 901).

For the reasons stated herein, Attorney Robol's Motion is hereby **DENIED**.

### I. BACKGROUND

DPC's Motion for Sanctions alleges that Attorney Robol made "fraudulent misrepresentations" to the Court regarding Defendants' possession of original inventories of the gold treasure at issue here; and that Defendants Thompson, Kirk, and Ford, as former directors

and/or managers of RLP and CX, exhibited "purposeful failure" to take action to prevent or correct Robol's misstatements. (Doc. 871 at 2). DPC seeks sanctions in the amount of the entire cost of these proceedings – that is, $1,717,388 – or for an award of the cost of the receivership proceedings[1] that were necessary to uncover the fraud, $325,613.00. (*Id.*).

DPC contends that the Court's July 20, 2006 Order (Doc. 84) was intended to resolve DPC's claim for an accounting, but instead resulted in futility and "sandbagging," the result of which was that Defendants were twice held in contempt for violation of the Order (*see* Doc. 145 & 480). Under the Order, the Court ordered Defendants to make available "all documents identified in the July 11, 2006 list by the Accountant," (Doc. 84 at 4), which, the Court later noted, included "an inventory of the gold recovered and sold by the Defendants" (Doc. 145 at 4). According to DPC, Defendants turned over *one* such inventory, but when pressed by the Court, stated, through Attorney Robol, that the produced document was the "one and only inventory that [RLP] had." (Doc. 871 at 7) (citing 12/8/08 Hrg. Tr. At 60). DPC asserts that Robol made such a representation to this Court on seven occasions and to the Court of Appeals twice. (*Id.*). DPC insists, however, that once the Receiver had taken over the assets and records of RLP and CX, he found the missing inventory documents with only a cursory search of Robol's office, implying that Robol lied when he told this Court, and the Court of Appeals, that the items could not be found. (*Id.* at 7-8).

Furthermore, on November 20, 2013, DPC filed a Supplemental Motion for Sanctions, alleging that additional investigation by the Receiver "has now revealed another category of documents that Judge Sargus ordered Defendants to produce, but Mr. Robol said they did not

---

[1] On February 27, 2013, CX gave notice of an involuntary bankruptcy petition, filed by creditors, pursuant to Chapter 11 of the U.S. Bankruptcy Code. (Doc. 865). On May 23, 2013, the Franklin County Court of Common Pleas appointed Ira Kane as Receiver for CX and RLP. (Case No. 05-CV-4220).

have." (Doc. 888 at 3). The Court entered an agreed Order that this Supplemental Motion would be briefed and argued on the same schedule as the original Motion. (Doc. 892).

## II. LAW AND ANALYSIS

Attorney Robol does not dispute that the documents in question "should long ago have been produced." (Doc. 893 at 4). Instead, he argues that the violations, if any, were committed by his former clients, RLP and CX, now under the control of the Receiver, and thus they, and/or the Receiver are the proper targets for this Motion. Robol himself was not the object of the Court's orders, and indeed never a party to this case. Robol notes that going forward with the evidentiary hearing without RLP, CX, and/or the Receiver could also create thorny issues of attorney-client privilege and derivative liability.

Specifically, Robol raises the following objections to the Motion for Sanctions:

1) The "Order of Satisfaction" is dispositive, because, in that order, the Court found that Defendants had complied with all of the Court's production orders, the violations of which are the source of this Motion for Sanctions;
2) Robol has never been a party to this case, and so he is not amenable to sanctions under the Court's inherent powers;
3) Robol was never the object of the Court's orders to produce documents, the violations of which are the source of this Motion for Sanctions;
4) Robol did not plausibly defraud the Court or otherwise proceed in bad faith;
5) Robol's liability, if any, is derivative of his former clients' liability, and therefore those companies, and/or the Receiver, are necessary parties for this Motion.

(Doc. 893 at 2).

In response to Robol's argument regarding the Order of Satisfaction, DPC filed a Motion to Vacate the Order of Satisfaction on December 20, 2013 (Doc. 902), on the grounds that it was obtained via fraud, and therefore invalid. DPC hastened to add that the Court does not need to vacate the Order for Satisfaction, since, if the Court finds sanctionable fraud after the February

3

18, 2014, evidentiary hearing, it can vacate the Order of Satisfaction at that time. (Id. at 2). But vacating the Order now, DPC argues, would "put[] an end to Mr. Robol's attempt to hide behind an order that was obtained by material misrepresentations to the Court." (Id. at 3).

### A.  The Order for Satisfaction and Plausibility Argument

With regard to Robol's arguments relating to the Order for Satisfaction, and the "plausibility" of the Motion for Sanctions, the Court finds that these objections necessarily implicate issues of fact, which are more properly considered after the Court has had the benefit of evidence and testimony. The Court will consider these arguments at the evidentiary hearing on February 18, 2014.

### B.  Robol's status as non-party and not the object of the Court's Orders

Attorney Robol is not, nor has he ever been, a party to this case. Thus, he argues that pursuing sanctions under the Court's "inherent authority" prejudices his ability to defend himself. Rather, he suggests that Fed. R. Civ. P. 11, 26, and 37 provide the proper mechanisms, if any, for seeking sanctions from opposing counsel in this case.

Robol asserts that, because the Federal Rules already contemplate, and provide a mechanism for, seeking sanctions for discovery violations, sanctions under the Court's inherent powers would not "fill a gap in the Civil Rules," but rather would serve only to "ease the burden of satisfying existing Civil Rules – to punish practices exempted by a Rule or that fall short of meeting a Rule's standard for sanctionable conduct." *United States v. Aleo*, 681 F.3d 290, 307 (6th Cir. 2012) (Sutton, J., concurring). Instead, "[a]ny effort to sanction [a] lawyer would have to rise or fall based on the relevant rules and statutes already in place." *Id.* at 308. In sum, in a civil case, "a court's use of inherent power to sanction . . . [can] not be reconciled with the sanctioning regime already in place under the Federal Rules of Civil Procedure." *Id.* at 307.

4

Robol urges the Court to address any sanctions against him under the framework of Fed. R. Civ. P. 26(g), which covers discovery disclosures, and 37, which addresses disobedience of a discovery order. (Doc. 893 at 16). Both of those Rules allow for the moving party to recover only "the reasonable expenses, including attorney's fees, caused by the violation." Robol concludes that, since DPC does not, and cannot, show that it incurred any additional costs or expenses because of Robol's representations, the Motion for Sanctions should be dismissed as to him. (*Id.* at 17).

In addition, Robol adds that the Consent order, which underlies DPC's Motion for Sanctions, addresses its mandates to "Defendants," not their counsel. (*See* Doc. 84). In general, sanctions for "violation of a definite and specific court order" require a showing by clear and convincing evidence that the order was violated, regardless of the source of the court's authority. Grace v. Center for Auto Safety, 72 F.3d 1236, 1243 (6th Cir. 1996). When a person has not violated any order, sanctions are not justified. Burley v. Gagacki, 729 F.3d 610, 618 (6th Cir. 2013) ("[B]ecause plaintiffs never moved to compel disclosure or discovery, the federal defendants did not violate any court order that would justify any sanction under Rule 37.").

Robol thus argues that, because he did not violate any order (and could not violate any court order, as none was addressed at him), it would be improper for the Court to impose sanctions against him.

DPC responds that it does not matter that Robol is "not a party" to this case, because "the sanctions motion is about the obligation of a *trial attorney* – an officer of the court – to deal honestly with the court." (Doc. 895 at 9) (emphasis in original). And, "[s]ince attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court." *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976).

5

Accordingly, DPC argues that, when an attorney perpetrates fraud upon the court, it is well within the court's powers to sanction the attorney.  In support, DPC cites several Sixth Circuit cases sanctioning attorneys for fraudulent conduct under the court's inherent powers.  In *Red Carpet Studios Div. of Source Advantage, Ltd. V. Sater*, 465 F.3d 642 (6th Cir. 2006), the Court of Appeals affirmed the award of sanctions against attorney Joel Joseph under 28 U.S.C. § 1927, and pursuant it its inherent authority, for his conduct in mailing harassing cease-and-desist letters, moving for injunction with no support and no preparation for the hearing, and failing to cooperate in scheduling a deposition for one of his clients.  465 F.3d at 644.  The court held that, even though the case had already settled, the district court retained jurisdiction over collateral issues like sanctions, and that "federal courts have the inherent power to assess attorney's fees against counsel who willfully abuse judicial processes or who otherwise act in bad faith."  *Id.* at 645-46 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-67 (1980)).

Moreover, in *Metz v. Unizan Bank*, 655 F.3d 485 (6th Cir. 2011), the Court of Appeals found that the District Court's use of its inherent authority to sanction an attorney was not improper, even when Fed. R. Civ. P. 11 *was* available.  In that case, defendant Fifth Third Bank sought sanctions against attorney Daniel Morris because, after Fifth Third had been dismissed with prejudice, Morris filed a complaint that reasserted identical claims against the bank.  655 F.3d at 487.  When Morris failed to respond to Fifth Third's request for sanctions, the district court sanctioned him under its inherent powers.  *Id.*  The Court of Appeals affirmed.  The court reasoned that "although a court ordinarily should rely on the Rules rather than the inherent power, . . . the district court [can] resort to its inherent authority to sanction bad-faith conduct, even if the court has not expressly considered whether such conduct could be sanctioned under all potentially applicable rules or statutes," 655 F.3d at 491 (internal quotations and citations

6

omitted).  The court relied, however, on the fact that Morris never responded to the motion for sanctions, thus "le[aving] the district court with few options" other than to employ its inherent powers.  *Id.* at 490.  In addition, the court noted that Rule 11 was not directly on point, since that rule does not cover "disregard of court orders" or "inaction that needlessly delays the entire proceedings," such as failure to respond and failure to attend a pretrial conference.  *Id.* at 491.

Finally, in *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002), the Court of Appeals affirmed the imposition of sanctions against *a party* under the district court's inherent powers, despite the fact that Rule 11 was available.  The court explained that "[e]ven if there were available sanctions under statutes or various rules in the Federal Rules of Civil Procedure, the Supreme Court in *Chambers* emphasized that the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation."  307 F.3d at 511.  Although Supreme Court precedent states that a district court should *consider* whether the conduct could be sanctioned under the Rules before it relies upon its inherent authority to sanction bad-faith conduct, it may do so even if the Rules arguably are applicable.  *Id.* at 512.

The Sixth Circuit's reasoning in *Red Carpet*, *Metz*, and *First Bank* makes clear that district courts can sanction attorneys for their misconduct, even if they are not parties to the litigation.  The ability of courts to deploy their inherent power to sanction in situations where no Rule or statute is directly on point is beyond question.  Thus, in *Metz*, the Court of Appeals reasoned that Rule 11 did not apply to all of the conduct at issue, and therefore the exercise of the court's inherent authority was appropriate.  655 F.3d at 491.  Moreover, even it situations where a Rule or statute might arguably apply, the district court may still use its inherent authority to sanction.  As the Court of Appeals explained in *Red Carpet*, where an attorney's actions were an "unreasonable and vexatious multiplication of litigation" as well as a "willful[] abuse [of]

7

judicial processes [and/or] in bad faith," 465 F.3d at 646, sanctions could be "justified under § 1927, the court's inherent authority, or both." *Id.* at 647.  The inherent authority of the Court is "an independent basis for sanctioning bad faith conduct in litigation," *First Bank*, 307 F.3d at 511, and it is not the case that "a federal court [is] forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under [a] statute or the Rules," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).  This is particularly true when wrongful conduct covered by the Rules is "intertwined with bad-faith conduct beyond the reach of the Rules that only the inherent power could address." *Aleo*, 681 F.3d at 310 (Sutton, J., concurring) (internal quotation omitted).  In such cases, a district court is not required to "separate out the conduct forbidden by the Rules from conduct sanctionable only through the inherent power," and can instead rely on its inherent authority.  *Id.*

The Court need not decide now whether to sanction Attorney Robol under the Federal Rules of Civil Procedure, its inherent authority, or not at all.  It is sufficient at this preliminary stage for the Court to find that Robol's Motion to Dismiss will not be granted on this ground.

### C. Robol's liability vis-à-vis his former clients

Finally, Robol argues that any liability he faces is "derivative of, and secondary to, his former clients' liability." (Doc. 893 at 17).  He suggests that if DPC had filed a claim against his former clients (now, the Receiver), Robol could have asserted cross-claims against them. (*Id.*).  Or, DPC could have brought its motion for sanctions against the Receiver only, and the Receiver in turn could have sought remuneration, if proper, in a malpractice lawsuit against Robol. (*Id.* at 18).  Robol accuses DPC of choosing the target of its Motion for Sanctions with an eye toward cutting off Robol's strategic options, while also protecting the Receiver, with whom Robol alleges DPC now has an amicable relationship. (*Id.* at 17 n.6).  In addition, Robol argues that

8

DPC's choice of targets for this Motion was calculated to ensure that Robol could not offer evidence of assurances made to him by his former clients, since, as non-parties, such statements might now be inadmissible hearsay. (*Id.*).

DPC responds by noting that Robol's reliance on his client's representations is no excuse: "trial counsel themselves have an affirmative obligation to ensure that what their clients tell them is accurate." *Brown v. Tellermate Holdings, Ltd.*, No. 2:11-CV-1122, 2013 WL 1363738, at *6 (S.D. Ohio Apr. 3, 2013) (Kemp, M.J.). And DPC adds that, even if his clients told him a lie, because Robol knew it was a falsehood, he is equally guilty of fraud upon the Court. *See General Medicine P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 72 (6th Cir. 2012) (fraud requires, at minimum, a "reckless disregard for the truth," which includes "situations where the actor has knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so.").

Nor, according to DPC, is Robol's liability "derivative" of his client's. (Doc. 895 at 22-23). Because Robol was the one who "turned a blind eye" to his client's actions, even when he knew the truth, he is the one who perpetrated the fraud on the Court. (*Id.* at 23). Moreover, even if his liability were derivative, DPC argues that Robol's clients and/or the Receiver still would not be necessary parties. (*Id.*). DPC asserts that it is "well-settled" that "joint tortfeasors are not indispensable parties." *Dennis v. Wachovia Securities LLC*, 429 F. Supp. 2d 281, 290 (D. Mass. 2006) (quotation omitted).

Whether or not Robol fulfilled his obligations to deal with the Court in good faith, and whether he reasonably relied on his former clients' representations, are matters that go to the substantive merit of the Motion for Sanctions, and not to be answered here. Regardless, Robol fails to direct the Court to any authority supporting his contention that either RLP and CX, or the

Receiver, are necessary parties that must be included in the Motion for Sanctions in order to proceed.  Rather, it is axiomatic that joint tortfeasors, including those in an agency relationship, are *not* indispensable parties.  *See Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1198 (6th Cir. 1983) ("It is beyond peradventure that joint tortfeasors are not indispensable parties in the federal forum.").  In addition, it is clear that DPC's Motion for Sanctions alleges misconduct by Attorney Robol himself, not just by his former clients.  (*See Motion for Sanctions*, Doc. 871, at 13-19, 23-24; *DPC's Response*, Doc. 895, at 17).

Accordingly, Robol's Motion to Dismiss is **DENIED**.

### III. CONCLUSION

Attorney Robol has demonstrated no good reason that the Motion for Sanctions should not go forward against him.  Accordingly, his Motion to Dismiss (Doc. 893) is hereby **DENIED.**

**IT IS SO ORDERED.**

        s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  January 14, 2014**