```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Michael Williamson, et al.,    :

      Plaintiffs,

    v.                             :      Case No. 2:06-cv-292

Recovery Limited Partnership,         JUDGE ALGENON L. MARBLEY
et al.,                        :
                                 Magistrate Judge Kemp
        Defendants.           :

## OPINION AND ORDER

### I. Introduction

This case has a long and interesting history.  Much of it is recounted in prior orders from this Court and will not be repeated here.  The three-minute version of events is that Defendant Thomas G. Thompson discovered a shipwrecked steamer, the *S.S. Central America,* in the Atlantic Ocean off the coast of North Carolina; raised funds to finance a salvage operation (the ship was transporting gold to New York); actually salvaged some of the gold; did not pay his crew or his investors; disappeared with substantial assets; was located after a long search; has been held in criminal and civil contempt of this Court; and has not provided complete information as to the whereabouts of some or all of the misappropriated assets.

The Dispatch Printing Company, one of Mr. Thompson's larger investors, has, since Mr. Thompson's apprehension, been pursuing discovery designed to fill in some of the missing information and to locate some or all of the missing assets, including a trove of gold coins purportedly worth some $2.5 million.  It has issued document subpoenas to a number of non-parties as part of this effort.  Some of the subpoenas have drawn objections and produced competing motions to quash and to enforce.  The Court will

address three of the subpoenas in this order.

## II. The CBIZ Subpoena

On October 26, 2015, the Dispatch filed a notice in this Court that it intended to serve a subpoena on CBIZ Accounting, Tax & Advisory of Florida, LLC, formerly known as Goldstein, Lewin & Company, P.A. CBIZ is an accounting firm located in Florida. The subpoena, attached to Doc. 982 as Exhibit 1, commanded production of twenty-two categories of documents. Grouped broadly, they relate to documents and communications with The CA Archeological Protection Trust, The Cromwell Trust, Columbus Exploration, LLC, the Hiassen Trust, Thomas G. Thompson, Alison Antekeier, Recovery Limited Partnership, certain other individuals whom may have been involved with the establishment of trusts for Mr. Thompson, and any information about "the five hundred (500) *S.S. Central America* restrike/commemorative gold coins." The subpoena was successfully served on October 27, 2015. (Doc. 988). CBIZ has moved to quash it, (Doc. 1002), and the Dispatch has countered that with a motion of its own (Doc. 1033).

Because the subpoena was served in Florida, the United States District Court for the Southern District of Florida initially had jurisdiction to resolve any issues concerning the propriety of the subpoena. See Fed.R.Civ.P. 45(d)(3)(A). That court transferred the motion to this Court, however, based upon the pendency of the case here and this Court's greater familiarity with it.

The parties appear to agree on some basic facts. CBIZ (including its predecessor entity, Goldstein, Lewin & Company) is a Florida-based accounting firm. It was retained by attorneys representing Mr. Thompson to assist with certain legal matters requiring accounting expertise. Any documents in CBIZ's possession that are responsive to the subpoena were prepared at

the attorneys' request.

In its filings on this issue, the Dispatch argues that none of the subpoenaed documents are privileged. It asserts that CBIZ (which the Court will use to refer both to CBIZ and its predecessor) was retained to do a valuation of Mr. Thompson's assets (or at least his claimed assets) and also worked with Mr. Thompson's lawyers to create a trust (the Cromwell II Trust) out of which more than a million dollars was ultimately transferred to another account. The Dispatch's response raises these points: that CBIZ has made only conclusory statements, rather than an actual showing, that the attorney-client privilege applies to the subpoenaed documents; that CBIZ has also not demonstrated that the documents at issue were actually prepared for the purpose of assisting Mr. Thompson's attorneys in providing him with legal advice (and, in fact, the valuations at issue were disclosed to third parties); and that there is no evidence that CBIZ was fulfilling the role of a "translator" of complex accounting information to Mr. Thompson's attorneys, which, under the case law relied upon by CBIZ - specifically, <u>United States v. Kovel</u>, 296 F.2d 918 (2d Cir. 1961) - is one of the essential elements of a claim of attorney-client privilege advanced by an accounting firm. The Dispatch has provided a lengthy affidavit (filed under seal as part of Doc. 1033) in support of its motion which includes language from the letter through which Mr. Thompson's attorneys engaged CBIZ and which describes the scope of the services to be rendered. CBIZ has elected not to file a reply memorandum in support of its motion to quash.

The attorney-client privilege generally protects only confidential communications given for the purpose of obtaining legal advice, and one of the parties to such a communication must be an attorney. <u>See generally Fisher v. United States</u>, 425 U.S. 391, 403 (1976)("Confidential disclosures by a client to an

attorney made in order to obtain legal assistance are privileged"). CBIZ is correct that decisions like <u>Kovel</u> have extended the privilege to accountants and other consultants whose services are necessary in order for the attorney to provide sound advice to the client. As <u>Kovel</u> noted, 296 F.2d at 922, " if the lawyer has directed the client, either in the specific case or generally, to tell his story in the first instance to an accountant engaged by the lawyer, who is then to interpret it so that the lawyer may better give legal advice, communications by the client reasonably related to that purpose ought fall within the privilege ...." However, the court stressed that "[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." <u>Id</u>; <u>see also Toler v. United States</u>, 2003 WL 21255039, *5 (S.D. Ohio Apr. 29, 2003)("The attorney-client privilege extends to memoranda and working papers prepared by an accountant at an attorney's request to assist the attorney in giving legal advice to the taxpayer").

    The question of why someone communicates with his or her accountant is a factual one. Was it to assist a lawyer in providing legal advice, or was it for other reasons? CBIZ's filings with the Court shed no light on this question. As this Court has said, "[t]he party asserting the privilege has the burden of proving each element of the claim." <u>Williams v. Duke Energy Group</u>, 2014 WL 3895227, *4 (S.D. Ohio Aug. 8, 2014). Further, Fed.R.Civ.P. 45(e)(2)(A)(ii), places the burden on a person who, in responding to a subpoena, claims privilege, to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." CBIZ has not done so. Under these circumstances, the Court cannot sustain its claim of privilege,

and it will enforce the subpoena.

### III.   The Zuckerman Subpoena

On the same day as it issued the CBIZ subpoena, the Distpatch filed another notice of subpoena, this one relating to Ira Zuckerman and the law firm of Zuckerman & Mata, LLC (also located in Florida). (Doc. 987). That subpoena commanded production of the same 22 categories of documents as the CBIZ subpoena. It was also served on October 27, 2015. (Doc. 991). On November 16, 2015, the recipients moved to quash. (Doc. 993). The Dispatch responded and filed a counter-motion to compel compliance on January 8, 2016. Again, although the original motions were filed in the Southern District of Florida, they have been transferred here under Rule 45(f).

In his motion to quash, Mr. Zuckerman stated that he does not have documents responsive to most of the requests, but argues that the ones he does have are protected by the attorney-client privilege or their disclosure is prohibited by both federal tax law and the Florida Constitution. In its memorandum (Doc. 1003), the Dispatch argues that each of these contentions is incorrect and that the subpoena should be enforced as issued.

As was the case with CBIZ, Mr. Zuckerman has not supplied the information required by Rule 45(e)(2)(A)(ii), nor has he submitted an affidavit, declaration, or other item of evidence substantiating his claim of privilege. For that reason alone, the Court would be justified in concluding that he did not meet his burden of establishing a factual basis for the claim of privilege and that the subpoena should therefore be enforced.

Beyond that, the Dispatch makes a persuasive case that the legal arguments advanced by Mr. Zuckerman are unfounded. For example, although the parties appear to agree that some of the documents in question are either tax returns or tax preparation materials, this Court has held that if such matters are relevant

to an issue before the court, there is no legal obstacle to their production as part of discovery. As the Court said in <u>Bricker v. R & A Pizza, Inc.</u>, 2011 WL 1990558, *2 (S.D. Ohio May 23, 2011),

> It is well-settled in the Sixth Circuit that tax returns are not privileged from disclosure. <u>DeMarco v. C & L Masonry, Inc.</u>, 891 F.2d 1236 (6th Cir.1989); <u>see also Credit Life Ins. Co. v. Uniworld Ins. Co.</u>, 94 F.R.D. 113 (S.D.Ohio 1982). Some courts, in recognizing the sensitive nature of the information contained in tax returns, have adopted a qualified privilege or stricter relevancy standard. <u>See, e.g., Terwilliger v. York International Corp.</u>, 176 F.R.D. 214 (W.D. Va. 1997). This standard applies a two-pronged test which analyzes whether the returns are relevant to the issues raised and, if so, whether the information is not otherwise available. <u>Id</u>. Some district courts within the Sixth Circuit have endorsed this two-part test for determining when discovery of a party's tax returns is permissible. <u>See, e.g., Smith v. Mpire Holdings, LLC</u>, 2010 WL 711797 (M.D. Tenn. Feb.22, 2010); <u>BM Investments v. Hamilton Family, L.P.</u>, 2008 WL 1995101 (E.D. Mich. May 6, 2008). At the same time, other district courts have held that the appropriate analysis simply "is whether the tax returns are relevant to the claim or defense of any party. Fed.R.Civ.P. 26(b)(1)." <u>Westbrook v. Charlie Sciara & Son Produce Co., Inc.</u>, 2008 WL 839745, at *3 (W.D. Tenn. March 27, 2008); <u>see also Kumar v. Hilton Hotels Corp.</u>, 2009 WL 3681837 (W.D. Tenn. Oct.30, 2009); <u>LaPorte v. B.L. Harbert International, LLC</u>, 2010 WL 4323077 (W.D. Ky. Oct.26, 2010). The Sixth Circuit has not adopted the two-part test or heightened relevancy standard.

Here, the relevance of this information is clear, and there is no suggestion that it is available from some other source. Thus, the tax information is not protected from disclosure. The same would appear to be true for the trust instrument in question, which, as the Dispatch points out, was necessarily shared with persons not part of the attorney-client relationship, and for what Mr. Zuckerman has described as ministerial communications with the trustee. In short, there do not appear to be any legal

obstacles to the production of the requested materials.

### IV. The Lorz/Lorz Communications Subpoena

The Dispatch filed a similar notice of subpoena to Michael Lorz and Lorz Communications on January 6, 2016. That subpoena called for the production of communications with some nineteen individuals or entities including Mr. Thompson, Ms. Antekeier, and a number of lawyers or law firms. (Doc. 1014). It was successfully served that day. (Doc. 1018). A motion to quash followed in short order, (Doc. 1025), followed by a motion to enforce compliance (Doc. 1027). The motion to quash asserts three grounds for relief: that the subpoena is overly broad, that it calls for the production of irrelevant information, and that some of the documents are subject to attorney-client privilege.

In response, the Dispatch identifies Mr. Lorz as Mr. Thompson's former publicist. It also argues that the individuals listed in the subpoena are all persons who may know something about Mr. Thompson's misappropriation of assets, and that Mr. Lorz, as "one of Thompson's closest confidants over the last decade, and especially since Thompson was arrested in 2015" (Doc. 1027, at 1), may well have documents which would shed light on where those assets are. It further notes in its memorandum that Mr. Lorz and Mr. Thompson have spoken by phone on many occasions (about seven phone calls per day) since Mr. Thompson's arrest and that Mr. Lorz has visited Mr. Thompson in jail on a regular basis. Finally, the Dispatch notes that Mr. Lorz has not substantiated his claim that any communications called for by the subpoena are privileged.

The reply memorandum does not dispute these basic facts. It does, however, raise issues about the Dispatch's representation about when the response was served (the service issue is addressed in Doc. 1032) and takes issue with a statement made by the Dispatch that Mr. Lorz misrepresented himself as an attorney

when visiting Mr. Thompson. The long and short of the service issue is that regular mail service of the response was made one day after the date listed in the certificate of service. The Court also accepts Mr. Lorz's representation that the log system at the Delaware County Jail, rather than any attempt at deception on his part, caused the Dispatch to believe that he had falsely signed himself in as an attorney when visiting Mr. Thompson. These matters are not material to the resolution of the motion to quash and will not be further discussed.

According to the reply, Mr. Lorz and his firm did serve as publicists for Mr. Thompson and his companies during the 1990s. Their activities included the design, organization, and installation of an exhibit at the Columbus Museum of Art relating to the gold salvage operation, and a similar exhibit at the Columbus Zoo. Mr. Lorz states that after 1995, he heard from Mr. Thompson only once - that being a telephone call in 2011 - until the date of Mr. Thompson's arrest in 2015. He does not dispute the Dispatch's representations about his visits and telephone calls to Mr. Thompson after that date. He does note that the subpoena, as written, calls for the production of all communications between himself and his company as well as between himself, his company, and the other names on the list, and argues that the Dispatch, in its response, simply ignored the fact that such a request is grossly overbroad.

Under Fed.R.Civ.P. 45(d)(3), the Court has the power to modify a subpoena if, among other things, compliance would subject the responding person to undue burden. The Court agrees with Mr. Lorz that requiring him to produce all communications between himself and his company on any subject from August 1, 2012 forward (the date in the subpoena) would be burdensome and would not likely lead to the discovery of relevant evidence. On the other hand, Mr. Lorz has made no argument that it would

burden him to produce any communications with the other seventeen persons or entities named in the subpoena, nor has he argued that such communications are irrelevant. The Dispatch has made a cogent argument that these communications could lead to evidence about Mr. Thompson's efforts to conceal assets, which is a key issue in this case, and a subject about which the Dispatch has a right to conduct discovery. See Fed.R.Civ.P. 26(b)(1)("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ..."). Further, the Dispatch represents in its reply memorandum (Doc. 1039, at 4) that it is asking only for "communications relating to Thompson, his assets, or assets of companies with which he had been affiliated ...." Those are relevant documents.

It might be inferred from Mr. Lorz's response that he does not have many, or any, responsive documents. But he will be required to produce those that he does have. Consequently, the subpoena will be enforced to the extent that it asks for production of documents reflecting communications between Francis Michael Lorz and/or Lorz Communications, LLC and anyone listed in paragraphs 1(c) through 1(s) of Exhibit A to the subpoena from August 1, 2012 to the present that relate to Mr. Thompson, his assets, or assets of companies with which he has been affiliated, and, in the event that there is some communication between Mr. Lorz and his own company on that subject, he must produce those as well.

## V. Order

Based on the foregoing, the Court makes the following orders:

1. The subpoena issued to CBIZ Accounting, Tax & Advisory of Florida, LLC on October 26, 2015, is enforced. CBIZ shall provide the requested records within 21 days of the date of this order.

    2.  The subpoena issued to Ira L. Zuckerman and Zuckerman & Mata, LLC, is enforced.  The requested records shall be produced within 21 days of the date of this order.

    3.  The subpoena issued to F. Michael Lorz and Lorz Communications on January 6, 2016, is enforced as modified in this order.  Those parties shall provide the requested records within 21 days of the date of this order.

    4.  This order resolves, and the Clerk shall remove from the Court's pending motions list, the following motions: Docs. 993, 1002, 1003, 1022, 1025, 1027, and 1033.

## VI.  Motion for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

                                    /s/ Terence P. Kemp
                                  United States Magistrate Judge