```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Michael Williamson, et al.,   :

      Plaintiffs,

    v.                           :         Case No. 2:06-cv-292

Recovery Limited Partnership,           JUDGE ALGENON L. MARBLEY
et al.,                       :
                                        Magistrate Judge Kemp
        Defendants.       :


                        OPINION AND ORDER

                      I.   Introduction

As this Court said in Williamson v. Recovery Limited Partnership, 2016 WL 4920773, *1 (S.D. Ohio Sept. 15, 2016),

> This case has a long and interesting history.  Much of it is recounted in prior orders from this Court and will not be repeated here.  The three-minute version of events is that Defendant Thomas G. Thompson discovered a shipwrecked steamer, the *S.S. Central America,* in the Atlantic Ocean off the coast of North Carolina; raised funds to finance a salvage operation (the ship was transporting gold to New York); actually salvaged some of the gold; did not pay his crew or his investors; disappeared with substantial assets; was located after a long search; has been held in criminal and civil contempt of this Court; and has not provided complete information as to the whereabouts of some or all of the misappropriated assets.

That order dealt with three subpoenas issued by The Dispatch Printing Company, one of Mr. Thompson's larger investors, designed to fill in some of the missing information and to locate some or all of the missing assets, including a trove of gold coins purportedly worth some $2.5 million.  This order addresses two other subpoenas.

The first subpoena at issue here was issued on October 26, 2015 (Doc. 985) and served on Carl H. Linder and Linder Law Group

(both of which will be referred to in this order as "Linder") in Miami, Florida on November 2, 2015 (Doc. 995). The second was issued on December 1, 2015 (Doc. 997) and served on Liz R. Wilson and the Law Office of Liz Wilson, P.A. ("Wilson") in Vero Beach, Florida on December 2, 2015 (Doc. 1010). Both subpoena recipients objected to producing certain documents described in the subpoenas, and the Dispatch has moved to compel them to do so. For the following reasons, the Court will deny the former motion without prejudice and grant the latter.

## II. The Subpoenas

The Linder subpoena commanded production of twenty-two categories of documents. Grouped broadly, they relate to documents and communications by or about Thomas G. Thompson Alison Antekeier, and Recovery Limited Partnership with The CA Archeological Protection Trust, The Cromwell Trust, Columbus Exploration, LLC, the Hiassen Trust, the Indemnification Trust, Thomas G. Thompson, Alison Antekeier (and her various aliases), CBIZ Accounting, Tax & Advisory of Florida, LLC or its successor, Carlos Andrade, Carlo Mason, and Global Consultants and Services Ltd., as well as documents about Mr. Thompson's or Ms. Antekeier's use of a company known as RoboVault.

The Wilson subpoena requested production of only seven categories of documents, including documents relating to Mr. Thompson and Ms. Antekeier or entities which they controlled, wire or asset transfers by them to other entities, documents relating to their bank accounts or safe deposit boxes, records of phone calls with them, and, more specifically, "documents relating to or reflecting telephone conversations with or regarding [Mr. Thompson and Ms. Antekeier] and the number (242) 646-4767."

Because both subpoenas were served in Florida, the United States District Court for the Southern District of Florida

initially had jurisdiction to resolve any issues concerning the propriety of the subpoena.  See Fed.R.Civ.P. 45(d)(3)(A).  The Dispatch moved, in the Florida court, to compel both recipients to produce documents.  That court transferred these motions to this Court based upon the pendency of the case here and this Court's greater familiarity with it.  See Docs. 1042 and 1047.  The motions appear on this Court's docket as Docs. 1048 and 1050 (the latter of which is a redacted version of Doc. 1049).  The Court will set out a brief factual background of each motion and then determine whether the recipient's invocation of attorney-client privilege is a proper basis on which to withhold production of the documents at issue.

### A.  The Linder Motion

There are only a few facts relevant to this motion.  Mr. Linder, an attorney, prepared a trust instrument for the CA Archeological Protection Trust, a Belizean trust.  At one point, Mr. Thompson claimed to have delivered some of the recovered treasure - specifically, the missing gold coins - into that trust.  Mr. Lindner was representing Mr. Thompson when he drafted the trust instrument.  Mr. Linder, citing his attorney-client relationship with Mr. Thompson, has declined to produce both the trust instrument itself and certain other documents relating to it, including documents which appointed what are described as the "Protector, Custodian, and Investment Advisor" for the trust.  He acknowledges that copies of these documents were disclosed to persons or entities other than Mr. Thompson - namely, the trustee and the trust advisors - but contends that such disclosure does not, under applicable Florida law, waive the attorney-client privilege.

In support of his position, Mr. Linder relies on a section of the Florida Statutes Annotated which explains, for purposes of the attorney-client privilege, what a confidential communication

consists of.  F.S.A. §90.502(1)(c) says this:

> A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:
>
> 1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.
>
> 2. Those reasonably necessary for the transmission of the communication.

Mr. Linder contends that because it was reasonably necessary for him to disclose the trust agreement and the other documents in his possession to the trustee or the trust advisors in order for them to carry out their duties, that disclosure was a confidential communication.  Under F.S.A. §90.502(2), the client or lawyer may refuse to disclose any confidential communication "made in the rendition of legal services to the client," and Mr. Linder claims that these documents fit that definition.  The Dispatch, in its reply, argues that neither the contents of a trust instrument nor the transmittal of that and other necessary documents to the trustee or trust advisors was a communication made in furtherance of rendering legal advice.  Alternatively, it argues that Mr. Linder has not produced any evidence that these were such communications.

    The Dispatch relies heavily on the decision in <u>United States v. Davis</u>, 636 F.2d 1028 (5th Cir. 1981), a case involving enforcement of an IRS summons against a Texas resident.  Among the documents subpoenaed were records relating to the "[e]stablishment and maintenance of [a] trust."  <u>Id</u>. at 1033 n.3.  The Court concluded that these and other documents were not privileged because "[a]n attorney who acts as his client's business advisor, or his agent for receipt or disbursement of money or property to or from third parties ... is not acting in a legal capacity, and records of such transactions are not

privileged." Id. at 1044. In addition, the court observed in a footnote (n. 19) that "[d]ocuments establishing trust funds, requested by item 8(a), are not privileged because in their creation the attorney acts merely as a scrivener." This shows, according to The Dispatch, that the contents of the trust instrument, even though it may have been drafted in accordance with Mr. Thompson's wishes, which were communicated in privileged fashion to his attorney, are themselves not privileged.

Based on decisions from Florida courts, this Court has some difficulty accepting this argument. For example, in Compton v. West Volusia Hosp. Authority, 727 So.2d 379, 382 (Fla. App. 5th Dist. 1999), the court upheld a claim of attorney-client privilege for a client's unpublished will, pointing out that "because the will and its contents have not been revealed to others beyond what was required to properly execute it, the attorney-client privilege remains intact." The Compton court also found a Florida constitutional privacy interest in the will's content. Compton strongly implies that when drafting an instrument, whether it be a will or a trust, which would reveal a person's plans for the disposition of property, an attorney acts as more than a "scrivener." One of the cases cited in Compton, Bower v. Weisman, 669 F.Supp. 602 (S.D.N.Y. 1987), also appears to conclude that communications about drafting a trust and the trust agreement arising out of those communications are privileged (although in that case the privilege was waived because the client voluntarily produced the attorney's notes about the trust). According to these decisions, if the trust agreement prepared by Mr. Linder had never been disclosed to a third party - which was the case with the will involved in Compton - its contents would be privileged.

To the Court, these cases seem correct. Preparing a trust agreement is ordinarily considered to be the practice of law and

not just "scrivener work."  See, e.g., The Florida Bar v. Hughes, 824 So.2d 154 (Fla. 2002) (holding that the preparation of land trusts by a non-lawyer constitutes the unauthorized practice of law, which, in Florida, includes "the preparation of legal documents by a nonlawyer for another person to a greater extent than typing or writing information provided by the customer," see Florida Bar v. Miravalle, 761 So.2d 1049, 1051 (Fla. 2000)).  The trust instrument itself certainly reflects and reveals the client's confidential communications about the disposition of his or her property, much as a will does.  Courts have consistently recognized that the privilege attaches to communications relating to the making of a will.  Cf. United States v. Osborn, 561 F.2d 1334, 1340 (9th Cir. 1977)("the general rule with respect to confidential communications between attorney and client for the purpose of preparing the client's will is that such communications are privileged during the testator's lifetime and, also, after the testator's death....").  Given that conclusion, the key question here is whether disclosing the contents of the trust agreement or the appointment documents to the trustee and the trust advisors is a communication made "in furtherance of the rendition of legal services to the client" - in which case it does not destroy the privilege - or whether it is the type of disclosure which vitiates the attorney-client privilege which attaches to such documents.

There is a "Law Revision Council Note" to F.S.A. §90.502 which sheds some light on the meaning of subsection (1).  The note explains that the confidentiality of a communication is premised upon the existence of "circumstances that should be understood by the attorney" as reflecting the client's desire to maintain confidentiality.  Examples of such circumstances that are not consistent with confidentiality are the public disclosure of communications by the client or the disclosure to

"disinterested third persons ...." On the other hand, the note recognizes that "[p]racticality requires that some disclosure outside the immediate lawyer-client circle be allowed without impairing confidentiality" and that such disclosures may safely be made to such persons as "a spouse, parent, business associate or joint client" or to "employees or agents of a lawyer who routinely receive communications from the client for transmission to the attorney." Unfortunately, the notes do not address communication of otherwise privileged trust agreements to those whose services are needed in order to carry out the purpose for which the trust was created, nor has the Court been able to locate any Florida decisions - nor, for that matter, any other decisions - on this point.

It can be argued that providing the trustee named in a trust with a copy of the trust is a communication which, in the words of §90.502(1)(c), is made "in furtherance of the rendition of legal services to the client." On the other hand, it can also be argued that the proper scope of the legal services being provided to a client in this context includes only insuring that the trust instrument accurately reflects the wishes of the client, a purpose that is completely fulfilled once the final draft of the trust instrument has been completed. If that is so, forwarding the document to the trustee (and also forwarding other trust-related documents such as those appointing trust advisors), while that action might further the personal or business interests of the client which prompted him or her to create a trust, would not further the attorney's ability to provide legal advice to the client about the terms or efficacy of the trust itself. Either interpretation is possible. Given that this appears to be an issue of first impression under Florida law, this Court is hesitant to be the first to decide it.

The Court is somewhat surprised that The Dispatch did not

argue, in the alternative, that any otherwise privileged communications between Mr. Thompson and Mr. Linder concerning this particular trust fall within the crime-fraud exception. Florida clearly recognizes this exception; in fact, it is found in §90.502(4)(a), which says that there is no attorney-client privilege when "[t]he services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or fraud." As the Florida courts have held, "[u]nder the statute, it is immaterial whether the lawyer knows that the client intends to commit a crime or perpetrate a fraud, so long as the client has the intention to do so sometime in the future." First Union Nat'l Bank v. Turney, 824 So.2d 172, 187 (Fla. App. 2001). There is a substantial amount of evidence now before the Court that Mr. Thompson was engaged in either fraudulent or criminal acts, or both, with respect to his secretion of assets upon which The Dispatch and others had claims. Perhaps there are reasons why The Dispatch does not believe that the crime-fraud exception applies here, but they are not immediately apparent to the Court. Because this provides a possible ground for resolving the dispute between The Dispatch and Mr. Linder which would eliminate the need to decide a state law issue of first impression, the Court will deny the motion to compel without prejudice to its reassertion on other grounds. Should The Dispatch re-file its motion, it may also present additional arguments in support of its interpretation of §90.502(1)(c) which take into account the Court's present discussion of that statute.

### B. The Wilson Motion

The facts relating to this motion can also be stated succinctly. Ms. Wilson is also an attorney. She has admitted, in response to the subpoena, that she has records relating both

to wire transfers of funds on behalf of either Mr. Thompson or Ms. Antekeier, and also has records of her client trust account which relate to one or both of them. She has also asserted the attorney-client privilege for these records. Ms. Wilson did not file a formal response to the motion to compel, but did file her objections to the subpoena with the Court. See Doc. 1005.

In its motion, The Dispatch argues that records of financial transactions are not subject to the attorney-client privilege. Such records are, first, disclosed to financial institutions, and, second, do not reflect any communications made for the purpose of obtaining legal advice. It cites to a number of cases holding that fund transfers, even those accomplished through an attorney, are simply ministerial tasks, and to cases applying that rationale to the records concerning the attorney's own trust account. The Dispatch also argues that such records have not been shown to be subject to the work product privilege. As noted, Ms. Wilson has not responded to these arguments.

The cases cited by The Dispatch are persuasive on this issue. Eastern Air Lines, Inc. v. Gellert, 431 So.2d 329 (Fla. App. 1983), for example, involved a subpoena issued to a lawyer to produce records of payments made to him and his firm by Eastern Air Lines, a client of the firm. The lower court refused to quash the subpoena. The Florida Court of Appeals affirmed, holding that it was "apparent that the records of payments ... do not implicate the attorney-client privilege." Id. at 331, citing, *inter alia*, In re Grand Jury Proceedings (Slaughter), 694 F.2d 1258 (11th Cir.1982). That case, in turn, held that "no confidences will be disclosed" by an order directing an attorney to reveal payments and that such information is not a communication made to an attorney for the purpose of seeking legal advice. Under some circumstances, the disclosure of such information might reveal a client confidence, but there is no

evidence in this record that it would do so here.

Similarly, in <u>Sweetapple, Broeker & Varkas, P.L. v. Simmons</u>, 151 So.3d 42, 43 (Fla. App. 2014), the Florida Court of Appeals upheld a trial court's decision not to quash a subpoena that had been issued for records of a law firm's trust account.  The court noted that the financial information reflected in those records was "not privileged in the hands of the client" and was therefore "not privileged in the hands of the attorney."  Again, Ms. Wilson has made no showing that any financial information concerning either Mr. Thompson or Ms. Antekeier was privileged in their hands or that disclosing their deposits into, or disbursements from, her trust account would reveal any confidential communications.

Finally, to the extent that the subpoena also calls for the production of documents which show financial transactions undertaken by Ms. Wilson or her firm at the request of either Mr. Thompson or Ms. Antekeier (but which are separate from either payments they made to the firm or deposits or disbursements from the trust account), the Court is persuaded that such records do not ordinarily reflect communications made for the purpose of obtaining legal advice.  Rather (and again subject to the caveat that such transactions may be privileged if they reveal the contents of a confidential communication made in order to obtain legal advice), a law firm's conduct of financial transactions for a client can be characterized as "a ministerial or clerical" service that is "not within the privilege."  <u>See United States v. Bartone</u>, 400 F.2d 459, 461 (6th Cir. 1968); <u>see also United States v. Krug</u>, 379 Fed.Appx. 473, 478 (6th Cir. June 1, 2010)(no privilege attached when a party "was merely using his attorney to help with financial management").  Given the lack of any evidence from Ms. Wilson that the records at issue go beyond that, it is appropriate to direct her to produce them.

## III. Order

For the foregoing reasons, the motion to compel relating to the Linder subpoena (Doc. 1048) is denied without prejudice.  The motion relating to the Wilson subpoena (Doc. 1050, which is the redacted version of Doc. 1049) is granted.  Ms. Wilson shall produce the withheld documents within 21 days.  The Clerk shall remove Docs. 1048, 1049, and 1050 from the Court's pending motions list.

## IV. Motion for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge